## HEARNE v. UNITED STATES.

### No. 45105.

Court of Claims.

Dec. 2, 1946.

Herman J. Galloway, of Washington, D. C., (Harry D. Ruddiman, Fred W. Shields, George R. Shields and King & King, all of Washington, D. C., on the brief), for plaintiff.

Donald B. MacGuineas, of Washington, D. C., and John F. Sonnett, Asst. Atty. Gen. (Irvin M. Gottlieb, of Washington, D. C., on the brief), for the defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

MADDEN, Judge.

This is a suit by an employee of the Panama Canal, who worked on floating equipment, to recover overtime compensation at the rate of time and one-half for hours of work in excess of 40 hours per week. The

claim is based on Section 23 of the Act of March 28, 1934, 48 Stat. 522, 5 U.S.C.A. § 673c.

The plaintiff's situation is substantially identical with that of Townsley who was given a judgment by this court, Townsley v. United States, 101 Ct.Cl. 237, which was affirmed by the Supreme Court of the United States, United States v. Townsley, 323 U.S. 557, 65 S.Ct. 413, 89 L.Ed. 454. Under ordinary circumstances, then, the plaintiff would be entitled to recover, under the precedent of the Townsley decision. But the Government says that it did not, in the Townsley case, present all of the relevant evidence of the legislative history and the administrative construction of the 1934 statute and that it did not, in the Townsley case, assert the defense of laches, but does so in this case. Because of the importance of the question, there being some 174 other cases pending whose decision will be governed by that in this case, we have given a complete reconsideration to the questions involved, in the light of the additional evidence and the new or modified arguments of the Government. We shall, however, not repeat in this opinion what was said in the Townsley opinion, but shall only discuss the new evidence and the different arguments.

Section 23 of the Act of 1934 is as follows: "The weekly compensation, minus any general percentage reduction which may be prescribed by Act of Congress, for the several trades and occupations, which is set by wage boards or other wage-fixing authorities, shall be re-established and maintained at rates not lower than necessary to restore the full weekly earnings of such employees in accordance with the full-time weekly earnings under the respective wage schedules in effect on June 1, 1932: Provided, That the regular hours of labor shall not be more than forty per week; and all overtime shall be compensated for at the rate of not less than time and one half."

The Government contends:

(1) That the plaintiff's compensation was not fixed by a wage board or other wage-fixing authority, within the meaning of the statute, and hence the statute was not applicable to the plaintiff.

(2) That the plaintiff's compensation was on a monthly basis, and the statute applied only to employees whose pay was fixed on an hourly or daily basis.

(3) That the plaintiff is barred by laches.

As to the first contention, the manner in which the plaintiff's compensation was fixed is shown in findings 6 through 17. There was a wage board appointed by the Governor of the Canal to advise him as to what should be the wages of workmen whose wages were not set by or pursuant to statutory classifications. This Board, pursuant to the Governor's order creating it, only made recommendations to the Governor, who himself fixed the wages. In this respect its function was identical with that of the various wage boards set up in governmental establishments in the United States where persons were employed in the mechanical trades, and were not covered by the Classification Act. It was, unquestionably, a "wage board" within the meaning of the statute, in so far as it made its recommendations of wages for nonclassification act employees of the Canal other than those on the floating equipment, since otherwise Section 23 would not have applied to such employees. Yet the section was applied to such employees and the Government does not contend that it was wrongly so applied. So the wage board of the Canal was not only a wage board in name; it was a wage board within the meaning of Section 23. But, the Government contends, it was not a wage board within the meaning of Section 23 as to the plaintiff and other floating equipment employees. This extraordinary and narrowly technical construction calls, of course, for justification. The Government's brief in this case says: "In the Townsley case the record contained little of the data relevant to this contention. It was advanced by defendant in a rather tentative fashion in the original brief (Townsley R. 58–62). It was also referred to briefly in defendant's brief in support of its motion for a new trial in that case (Townsley R. 124, 125). * * * This issue was not raised by defendant before the Supreme Court * * *."

We think that the Government's estimate, in the Townsley case, of the validity

of this point was substantially correct. We think the point is not valid.

When Section 23 became law on March 28, 1934, many agencies sought advice as to its meaning and scope. The Judge Advocate General of the Army rendered an opinion dated April 3, 1934, in which he said that the section had no application to skilled or unskilled laborers employed by the Engineer Department. See finding 18. The reason that he gave seems insufficient but the ruling came to the attention of the Governor of the Canal, who, because his floating equipment employees' compensation was, to a considerable extent, based upon the compensation of Engineer Corps employees, gave weight to the opinion. On April 4, an agent of the Governor directed an inquiry to the Comptroller General of the United States as to the applicability of Section 23 to the various employees of the Canal. It so happened that in the submission, "Employees on floating equipment, policemen, firemen, etc." were named together under a number, 3. In his reply, the Comptroller General ruled that "class" (1) "Employees in artisan and mechanical groups compensated at hourly rates of pay"; and "class" (2) "Similar employees compensated at monthly or annual rates of pay", were subject to the provisions of Section 23 of the act. He then said: "As to employees in Class (3), that is, those on floating equipment, policemen, firemen, etc., it is understood that the rates of these classes of employees in the continental United States are usually fixed not by wage boards or other wage-fixing authorities but by or pursuant to statute. Hence it would appear that section 23 of the Act of March 28, 1934 would not be applicable to them."

The Comptroller General's statement of his reason was, as to floating equipment employees, completely erroneous. The wages of floating equipment employees were not, in the United States, fixed by or pursuant to statute, though those of policemen and firemen were. The fact that these employees were listed in the submission under number (3) along with "etc." seems to have been purely accidental, yet it produced a ruling which the Governor, though he must have observed the Comptroller General's misapprehension, applied to the floating equipment employees, including the plaintiff. The Comptroller General's ruling is recited in finding 19. The Government in its brief gives as a reason why the Governor was not under a duty to correct the Comptroller General's misapprehension as to how the wages of floating equipment employees were fixed, the fact that in the beginning of the same opinion, the Comptroller General had quoted his ruling made earlier to the Public Printer. In that ruling he had, as appears in finding 19, advised the Public Printer that the expression "Or other wage-fixing authorities" used in Section 23 made the section applicable to wages fixed by an administrator, such as the Public Printer, without a board, when the administrator followed a procedure similar to that followed by wage boards, i.e., the Comptroller General said, when he fixed wages "with reference to wages, etc., paid to similar classes in commercial industry rather than with reference to salary rates or schedules of rates specifically fixed by or pursuant to statute."

What the effect of this statement upon the Governor may have been, we do not know. As to ourselves, it does not give us the slightest clue as to how the Comptroller General would have ruled as to the floating equipment employees if he had not misapprehended the relevant facts concerning them. But he would have been faced with the fact that they came exactly and literally within the language of the statute; that their compensation was "fixed", that is, recommended, just as was done in the cases of classes (1) and (2) which he ruled to be within the statute, by a "wage board," in fact by the same wage board that fixed the wages for classes 1 and 2. He would have seen that the alternatives which he stated to the Public Printer did not cover the case of the floating equipment employees at all and were, therefore, irrelevant, since their wages were not fixed, on the one hand by or pursuant to statute nor, on the other hand, if we admit the Government's contention, with reference to wages paid in commercial industry.

We think all that can be said of the Comptroller General's ruling is that, by mistakenly assuming the existence of what would have been, if present, a decisive fact,

he ruled that Section 23 was not applicable to floating equipment employees. It should be noticed that he said of the fact, "it is understood" and of the conclusion "it would appear." We think that such a ruling under such circumstances does not make law. We suppose that the Governor relied more upon the ruling of the Judge Advocate General of the Army. As to the reasoning of that ruling, no one now defends it. As to the correctness of the conclusion, regardless of the ruling, we suppose that the Government's position in this case amounts to a contention that its conclusion was correct. It should be remembered that it was not directed at all at the Panama Canal, but at the Engineer Corps of the War Department.

The Government urges that there has been a consistent course of interpretation and administration of Section 23 to the effect that it was inapplicable to situations where wages were fixed by boards or other authorities on bases other than comparison with commercial rates. But we are given no instance at all, other than the Comptroller General's ruling discussed above, which was based upon a mistake, where the Comptroller General or any other administrator ruled that employees whose compensation was fixed by a "wage board," thus coming within the very letter of the statute, were not covered by the statute. The rulings of the Comptroller General were given in cases where there was no wage board, and an administrator fixed the wages. The question was whether the administrator was an "other wage-fixing authority," and this question called for an interpretation of that more elusive and flexible expression. We are cited to one ruling of the Comptroller General, 13 Comp.Gen. 486, which is of particular interest because the wage board which fixed plaintiff's compensation based it largely upon the compensation of the Engineer Corps employees in the United States who were the subject of the cited ruling. The submission of the problem to the Comptroller General showed that the compensation of such employees was fixed by the District Engineers or by the Chief of Engineers and the Secretary of War in accordance with the following principles: (1) Each employee must receive a living wage; (2) the rates, in recognition of the law of supply and demand, must be high enough to attract the numbers and kinds of employees needed, and (3) the rates must be in line with those paid similar employees in similar positions and trades in the vicinity, it being improper to pay materially more or less than such private rates. (See finding 29.)

We cannot think of a more accurate way of saying that compensation shall be fixed by the administrator on the basis of comparable commercial rates than the language of the submission just quoted. The Comptroller General, ruling that Section 23 was not applicable, said: "While the administrative requirement stated in paragraph c of your letter that 'The rates must be in line with those paid employees in similar professions, positions, or trades in the vicinity' also may be a factor considered by Federal wage boards, it is not the controlling factor."

This statement, by ordinary construction of language, means that the factor described is not the controlling factor considered by Federal wage boards. But both the defendant and the plaintiff in their briefs construe it as meaning that the factor described is not the controlling factor in the Engineer Corps wage fixing process. They are probably right as to what the Comptroller General intended to say. But if he did intend to say that, it was a complete nonsequitur from the facts stated in the submission and we decline, with respect, to regard this ruling as setting a course of interpretation and administration which fixes the meaning of a statute. In fact the Comptroller General's ruling in the Engineer Corps case was nothing more than a repetition of a ruling made in 1918 by the Comptroller of the Treasury, 25 Comp.Dec. 131, for which that official gave a reason which was repeated by the Judge Advocate General of the Army in his ruling of April 3, 1934 referred to above (see finding 18), and which we do not understand and which the Government does not undertake to explain or defend.

The Government has proved that there were, in some other Government departments, employees whose wages were set in

various ways by administrators, and who were worked, in some cases regularly, more than 40 hours a week and were not paid overtime. But we are not told the reasons. As we saw in the Townsley case, supra, the Comptroller General had advised several agencies, and his advice was no doubt known to the others, that employees paid on a monthly and annual basis could not be paid overtime in any event, and should not be worked overtime except in cases of emergency. Most of the instances cited by the Government are those of employees whose compensation was fixed on an annual or monthly basis. Further, the Comptroller General had advised the Secretary of Commerce that Section 23 did not apply unless a wage-board procedure had been, to a considerable degree, formalized, 14 Comp. Gen. 215, 217, and this ruling may have affected other agencies. Further, many employees not under the Classification Act were paid by administrative adoption of Classification Act pay schedules, and for that reason were not regarded as covered by Section 23. See 25 Comp.Gen. 41. And the expression "The several trades and occupations" used in Section 23 may not be applicable to some types of administrative, clerical and custodial employees. In any event, we cannot say that all, or indeed any, of the administrators whose employees were worked more than 40 hours per week and were not paid overtime adopted the interpretation of Section 23 here contended for by the Government. There was, therefore, no consistent practice which gave meaning to the law.

The defendant urges that Congress understood the language about the fixing of wages by wage boards to mean their fixing in relation to wages paid in private industry. We have no doubt that Congress did have this impression for it was and is true that the wages of employees not covered by the Classification Act, but left to be fixed by the responsible administrator, must be fixed largely on the basis of going wages. The basis which the War Department made explicit in its submission to the Comptroller General in the case of the Engineer Corps floating equipment employees, described above, must necessarily be the basis, directly or indirectly, which the administrator uses, unless it is supposed that he fixes wages by sheer caprice. We see nothing in the legislative history which would justify us in concluding that Congress did not intend that employees in the plaintiff's situation should have the benefits of Section 23.

In our view, however, by the very standard of interpretation for which the Government contends, the process by which the plaintiff's wages were fixed was wage board procedure under the statute. It was done by a "wage board" which was, concededly, a wage board within the meaning of the statute when fixing the wages of other Canal employees. As to the other employees as well as the plaintiff, it looked to Government wages in the United States for its standard, and not to rates in private industry. But, the Government says, in the case of the other employees, the Government rates in the United States were, in their turn, fixed in relation to wages in private industry, and that satisfies the test. But in the case of the floating equipment employees, the Engineer Corps rates in the United States were fixed on the basis stated in the War Department's submission to the Comptroller General, and that too, satisfies the test, in our view as indicated above.

We conclude, therefore, that the plaintiff was an employee whose compensation was fixed by a wage board, within the meaning of Section 23 of the Act of March 28, 1934.

We now take up the second of the Government's contentions, which is that Section 23 was not applicable to the plaintiff because his compensation was fixed on a monthly basis. This argument was vigorously presented in this court and in the Supreme Court of the United States in the Townsley case, supra, and did not persuade either Court. We said in the Townsley case that it was not the view of the Comptroller General, nor of any other official, so far as appeared, that the section was not applicable to an employee, otherwise within its scope, because his compensation was fixed on a monthly basis. The Comptroller General's ruling was the exact opposite to the Government's contention. What he did rule was that, although the section was applicable, there was another overriding principle that if such an employee was worked

more than 40 hours a week, he still could not be paid overtime. This ruling was obeyed by the Departments and Agencies of the Government. We do not understand that the Government attempts to justify the ruling that such employees were partly within and partly outside the scope of the section. The additional evidence of administrative practice adduced by the Government in this case showing that, in fact, employees who were probably within the scope of the section were worked more than 40 hours a week and were not paid overtime, especially as the approach of the war created a national emergency, does not persuade us that we were wrong in the Townsley case. We still think that the Comptroller General's construction of Section 23, as applied to employees whose compensation was fixed on a monthly basis, was an impossible construction which could not and did not fix the meaning of the statute. And as to the construction urged so vigorously by the Government in the Townsley case and in this case, it has no administrative construction or practice whatever to support it.

 The Government contends that the plaintiff, even if he were otherwise entitled to recover, is barred by laches. We think not. We think that it would be quite unfair to hold that a workman such as the plaintiff did not see his statutory rights with sufficient clarity to promptly and continuously insist upon them. No one else saw the situation clearly. The rulings of the Judge Advocate General of the Army, the Comptroller General of the United States, and the United States Attorney for the Canal Zone were confusing and unclear. The Government itself, in this and the Townsley litigation, has found it difficult to analyze the problems and produce the evidence which, it says, should determine whether or not the plaintiff had rights under this statute. The employees' representatives, who spoke for the employees in such matters, did raise questions, as shown in findings 20, 23, and 24, as to the rights of such employees as the plaintiff, which afforded the Government full and early opportunity to study the problem and make up its mind what its law meant. As said by Mr. Justice Day speaking for the Supreme Court of the United States in Norris v. United States, 257 U.S. 77, 81, 42 S.Ct. 9, 11, 66 L.Ed. 136, a case in which the Government pleaded laches to a suit by a government employee for salary: "Each case must be decided upon its own facts, and we are of opinion that the findings here do not disclose that exercise of reasonable diligence on Norris' part which the law imposes upon him as a duty if he would recover compensation for services in an office which the Government might fill with another, or otherwise adjust its service so as to dispense with the service of the plaintiff."

Upon the facts of this case, we think that the plaintiff's conduct has not been so inconsiderate of the rights of his Government as to forfeit the right given to him by Section 23.

In the Townsley case, supra, this court, because of a misapprehension of the reasons for the actions of the Governor of the Canal in regard to Townsley and other employees similarly situated, made comments critical of the Governor's conduct. The fuller presentation of the facts and the different emphasis in the argument in this case have removed this misapprehension, and we are glad to say here that those comments are not justified.

The plaintiff is entitled to recover. The method of computing his overtime pay is set out in the Townsley case, supra. Upon the presentation by the parties of a stipulation showing the amount due the plaintiff for the period ending on the date of the filing of his petition, a judgment will be entered.

It is so ordered.