**GRAY v. UNITED STATES.**
Nos. 46301, 47897.

Court of Claims.
March 1, 1948.

Herman J. Galloway, of Washington, D. C. (Harry D. Ruddiman, John W. Gaskins, and King & King, all of Washington, D. C., on the brief), for plaintiff.

D. B. MacGuineas, of Washington, D. C., and H. Graham Morison, Acting Asst. Atty. Gen., for defendant.

Before JONES, Chief Justice, and LITTLETON, WHITAKER, MADDEN, and HOWELL, Judges.

MADDEN, Judge.

These two suits are for overtime pay claimed by the plaintiff as an operator of floating equipment while employed by the Panama Canal in its Dredging Division. The first suit covers the period from August 15, 1940, to November 30, 1942, and the second the period from December 1, 1942, to June 30, 1945. The issue in the cases is whether, during the period covered by the two suits, the plaintiff continued to be entitled to be paid overtime at the rates fixed by the Act of March 28, 1934, 48 Stat. 522, 5 U.S.C.A. § 673c, or, on the other hand, was subject to the provisions of a series of wartime overtime pay acts, the provisions of which were less favorable to him than those of the 1934 act.

Unless the 1934 act was superseded by the wartime acts, it was applicable to the plaintiff. Townsley v. United States, 101 Ct.Cl. 237, affirmed United States v. Townsley, 323 U.S. 557, 65 S.Ct. 413, 89 L.Ed. 454; Hearne v. United States, 68 F.Supp. 786, 107 Ct.Cl. 335. The Towns-

ley case was decided by this court in 1944. From the time of the enactment of the 1934 act until the time of that decision, employees of the Panama Canal, employed, as was the plaintiff, on a monthly basis, were not regarded as covered by the 1934 act and were, in fact, paid no overtime. The administrative rulings to that effect are cited in the Townsley and Hearne cases, supra. This variation between the meaning of the 1934 act, as it was actually interpreted and administered from 1934 to 1944, and its meaning as finally judicially determined, is the real cause of the problems presented in this case.

It may be assumed that, as the plaintiff contends, Congress did not, when it began, in 1940, to authorize the payment of overtime to specified classes of Government employees, intend to withdraw or reduce the existing overtime privileges of any Government employees. But the general misunderstanding to the effect that employees such as the plaintiff were not entitled to overtime, and the fact that such employees were not being paid overtime, created a situation in which the draftsmen of the war overtime legislation may well have thought that they were improving the position of employees such as the plaintiff, when in fact they were making that position worse, when viewed in the light of the later judicial interpretation of the 1934 act. The cases, then, present the following problem. When Congress has the general intention, as shown by the background of the legislation, not to subtract from the existing rights of any class of employees, but, because it is unaware of what those existing rights are, it enacts legislation which in terms applies to certain employees and, though seeming to enlarge their rights, in fact subtracts from them, shall the legislation be interpreted as applying to those employees or not?

■ Several canons of interpretation are urged by the plaintiff as having a bearing on the question. He urges that, in order to make the wartime overtime pay acts applicable to the plaintiff, it is necessary to get rid of the 1934 act by holding that it was repealed or suspended by the later acts. He says that repeals by implication are not favored, and cites, inter alia,

Posadas v. National City Bank, 296 U.S. 497, 503, 56 S.Ct. 349, 80 L.Ed. 351; United States v. Borden Co., 308 U.S. 188, 198, 60 S.Ct. 182, 84 L.Ed. 181. We do not, however, have here, as in the Posadas case, the question whether the reenactment of a statute results in a continuation of its effect from the time of its first enactment, or cuts off the original statute completely and makes a new start. Here the wartime overtime pay acts were not reenactments of the 1934 act. They were different from it in language and meaning, and, if they were applicable to the plaintiff, the 1934 act was not. We think that Congress did not intend to repeal the 1934 act, as it understood that act. We further think that if Congress had understood that act as it was later interpreted by the courts, it still would not have repealed it, but would, instead, have used language in the wartime overtime pay acts which would have made them inapplicable to employees in the plaintiff's class. But, because of the misunderstanding, Congress did use language in the later acts which made them applicable to the plaintiff. We conclude that the canon against repeals by implication does not justify us in rewriting the later acts to omit the plaintiff from their scope.

■ We recognize that a good deal of leeway is available to courts to depart from the usual meaning of the words of statutes when the application of the usual meaning would produce absurd results, or, even, merely unreasonable ones "plainly at variance with the policy of the legislation as a whole." United States v. American Trucking Associations, 310 U.S. 534, 543, 544, 60 S.Ct. 1059, 84 L.Ed. 1345. We think that, here applying the later statutes to employees in the plaintiff's class and thus subtracting from their rights rather than adding to them is at variance with the underlying purpose of the legislation, but is not at variance with the specific purpose which Congress, because of its unawareness of the existing rights of these employees, was intending to accomplish. We think we have no power to, in effect, reform statutes because Congress, in writing them, labored under a misapprehension as to facts or law.

We proceed then to the statutes themselves to determine whether they were applicable to the plaintiff and, if so, whether he has been paid the amounts to which he was entitled under them. The first is the Act of October 21, 1940, 54 Stat. 1205, which we print in a footnote.[1] Since the plaintiff was a monthly employee of the Panama Canal whose wages were set by a wage board or other wage fixing authority, Hearne v. United States, supra, 68 F.Supp. 786, 107 Ct.Cl. at page 393, he was an employee described in the statute. But the statute gives overtime only to such employees "as shall be designated from time to time by * * * the Governor of the Panama Canal," and the Governor did not designate the plaintiff's class of employees to receive overtime. The reason he did not do so, as shown by the Hearne case, supra, findings 18, 19, 27–32, was that he was advised that the process by which these employees had their wages fixed was not the "wage board or other wage fixing authority process" named in the statute. Consequently the plaintiff received no overtime pay. We have then the combination of events by which Congress, due to a mistake, takes the plaintiff out of the scope of the mandatory overtime 1934 act and includes him in the 1940 act giving discretion to the Governor of the Panama Canal, who, due to another mistake, does not exercise his discretion in the plaintiff's favor. We think we cannot exercise the discretion lodged by the statute in the Governor. The plaintiff urges that the fact that the Governor worked the plaintiff overtime was a designation within the meaning of the 1940 act. We think that the intent of the act was to give to the Governor the power to meet the employment situation by paying overtime when and if he decided to do so and that his mere working of an employee overtime, while refusing to pay him overtime wages, was not a designation within the meaning of the 1940 act.

The next pertinent statute is the Act of June 3, 1941, 55 Stat. 241, the text of which we print in a footnote.[2] This statute "authorized to be paid, under such regulations as the President may prescribe" time and one-half rates for work in excess of 40 hours per week to per annum employees of the Panama Canal whose overtime services were connected with that of the employees covered by the Act of October 21, 1940. The President issued Executive Order No. 8837, dated July 30, 1941[3]

---

[1] * * * That notwithstanding the provisions of any other law, compensation for employment in excess of forty hours in any administrative work-week computed at a rate not less than one and one-half times the regular rate is hereby authorized to be paid at such places and to such monthly, per diem, hourly, and piecework employees of the field services of the War Department and the field services of the Panama Canal whose wages are set by wage boards or other wage fixing authorities, and also to professional and subprofessional employees, and to blueprinters, photostat and rotaprint operators, inspectors, storekeepers, toolkeepers, and shop superintendents of the CAF service, as defined by the Classification Act of March 4, 1923 (42 Stat. 1488; 5 U. S. C. ch. 13), as amended, as shall be designated from time to time by the Secretary of War or the Governor of the Panama Canal, as the case may be, and the Secretary of War and the Governor of the Panama Canal are authorized to prescribe for their respective services, regulations for overtime employment for said employees or any of them: Provided, That in determining the overtime compensation of the foregoing per annum Government employees the pay for one day shall be considered to be one three-hundred-and-sixtieth of their respective per annum salaries."

[2] " * * * That compensation for employment in excess of forty hours in any administrative workweek computed at a rate of one and one-half times the regular rate is hereby authorized to be paid, under such regulations as the President may prescribe, to those per annum employees in the field service of the War Department, the Panama Canal, the Navy Department, and the Coast Guard, whose overtime services are essential to and directly connected with the expeditious prosecution of the overtime work upon which the employees enumerated in section 5(a) of the Act of June 28, 1940, and section 1 of the Act of October 21, 1940, are engaged: Provided, That in determining the overtime compensation of the foregoing per annum employees the pay for one day shall be considered to be one three-hundred-and-sixtieth of the respective per annum salaries."

[3] The text of the Executive Order is as follows:

106

and, pursuant to that Order the Governor of the Panama Canal designated the plaintiff's class of employees to receive overtime "for time worked outside of the administrative workweek heretofore established for the employees affected." The Governor determined that the "administrative workweek" had been 44 hours, hence the plaintiff was paid overtime for work in excess of 44 hours during the period from July 1, 1941, through November 30, 1942, the Act of June 3, 1941, having been extended to the latter date by the Joint Resolution of July 3, 1942, 56 Stat. 645, and the Joint Resolution of October 2, 1942, 56 Stat. 765.

The plaintiff's contentions with regard to the Act of June 3, 1941, are, first, that it had no application to the plaintiff and second, that if it did apply to him he was not paid what he was entitled to under it, since neither the statute nor the Executive Order permitted the Governor of the Panama Canal to limit the payment of overtime rates to only those hours in excess of 44.

We think that the Act of June 3, 1941, did not apply to the plaintiff. He was not a per annum employee, and he was, as we have concluded, covered by the earlier Act of October 21, 1940, to which the Act of June 3, 1941, was meant to be a supplement, authorizing the payment of overtime to the per annum office and supervisory people whose work was connected with that of the employees whose overtime pay was provided for by the Act of October 21, 1940, and another act not here relevant. But our conclusion that the Act of June 3, 1941, did not apply to the plaintiff does not remit him to the 1934 act. It still leaves him under the Act of October 21, 1940. We have, however, concluded that the action of the Governor of the Panama Canal under the Act of June 3, 1941, and the Executive Order pursuant thereto did give the plaintiff additional rights. As we have said, the Governor, for the period beginning July 1, 1941, designated the plaintiff to be paid overtime for work in excess of 44 hours per week. It will be remembered that the Act of October 21, 1940, supra, authorized overtime to be paid for work in excess of 40 hours per week to those employees specified in the act who should be designated by the Governor. The Governor could have designated the plaintiff's class of employees, but did not do so. Under the Act of June 3, 1941, which, as we have said, did not apply to the plaintiff, the Governor did designate the plaintiff's class of employees to receive overtime. We think that this designation, though purporting to be made under the 1941 statute, served as a designation under the 1940 statute. The Governor showed by it that he wanted the plaintiff's class of employees to receive overtime, and, indeed, if they had not at this time begun to receive overtime, the pattern of overtime payments would have been quite irrational. The daily and hourly paid hand workers on one side of the plaintiff and the annual employees on the other would both have had overtime while the plaintiff would not have

"By virtue of the authority vested in me by section 1 of the act of June 3, 1941, Public Law 100, 77th Congress, I hereby prescribe the following regulations governing the payment of compensation for employment in excess of forty hours in any administrative workweek to per annum field service employees whose overtime services are essential to and directly connected with the expeditious prosecution of the overtime work upon which employees enumerated in section 5(a) of the act of June 28, 1940, 54 Stat. 676, 678, and section 1 of the act of October 21, 1940, 54 Stat. 1205, are engaged:

"Section 1. Whenever the Secretary of War, the Secretary of the Navy, the Secretary of the Treasury, or the Governor of The Panama Canal, as the case may be, shall determine that employment in excess of forty hours a week of any per annum employee in the field services of the War Department, the Navy Department, the Coast Guard, or The Panama Canal is essential to and directly connected with the expeditious prosecution of overtime work which is being required of employees enumerated in section 5(a) of the said act of June 28, 1940, and section 1 of the said act of October 21, 1940, and for which overtime compensation is being paid, he is authorized to provide compensation for such employment in excess of forty hours in any administrative workweek at one and one-half times such employee's regular rate of pay." Fdg. 33 of findings of fact in Hearne v. United States, 68 F.Supp. 786, 107 Ct.Cl. 335, 370, 371.

had it. But, treating the Governor's designation as a designation under the 1940 act, we think he had no power under that act to enlarge the regular workweek from the 40 hours named in the statute to 44 hours, thus paying overtime only for work in excess of the latter figure. We think he would have had no such power even under the act of 1941 and the Executive Order, if they had been applicable to the plaintiff. We conclude, therefore, that the Governor's designation of the plaintiff to receive overtime was the meat of what he did, and, that having been done, we disregard the mistaken limitation placed by him upon his designation, and revert to the statute to determine the effect of his designation. The plaintiff was therefore entitled to overtime pay for all of his work in excess of 40 hours per week during the period from July 1, 1941, through November 30, 1942.

■ We still have the question of the formula by which the overtime should be computed. In Townsley v. United States, supra, at page 263 of 101 Ct.Cl. we show the formula by which overtime was computed under the 1934 act. The method was to multiply the monthly wage by 12 and divide the product by 52 to get the weekly wage, then divide the weekly wage by five to get the wage per day, since the 40-hour week was a week of five eight-hour days. Then, for a sixth day or a part thereof, the daily wage, increased by fifty percent to give one and one-half times the regular rate, was used. This method of computation was approved by the Supreme Court. United States v. Townsley, 323 U.S. 557,

573, 65 S.Ct. 413, 89 L.Ed. 454. The parties to this case use the expression "true overtime" to describe the result of this formula, and we shall do likewise. This "true overtime" is contrasted with the overtime provided in some statutes which is computed by dividing the annual salary by 360, as if the employee worked practically every day in the year, to determine his daily pay on the basis of which his time and one-half for overtime should be based. "True overtime" is, of course, substantially larger than the limited overtime just described.

The Act of October 21, 1940, after authorizing the payment of overtime "at a rate not less than one and one-half times the regular rate" to such "monthly, per diem, hourly, and piecework employees" as were described and as should be designated to receive overtime, said, at the end of Section 1:

"Provided, That in determining the overtime compensation of the foregoing *per annum* Government employees the pay for one day shall be considered to be one three-hundred-and-sixtieth of their respective per annum salaries. [Italics added.]

■ Since the plaintiff was not a per annum employee, the proviso did not apply to him and he was entitled to be paid true overtime for his work in excess of 40 hours in any week from July 1, 1941 through November 30, 1942.

The next legislation in question is the Joint Resolution of December 22, 1942, 56 Stat. 1068, pertinent parts of which we print in a footnote.[4] This overtime pay

---

4 " * * * That the joint resolution entitled 'Joint resolution extending the period for which overtime rates of compensation may be paid under certain Acts,' approved July 3, 1942, is amended by striking out 'November 30, 1942,' and inserting 'April 30, 1943': Provided, That the authorization contained herein to pay overtime compensation to certain groups of employees is hereby extended, effective December 1, 1942, to all civilian employees in or under the United States Government, including Government-owned or controlled organizations (except employees in the legislative and judicial branches), and to those employees of the District of Columbia municipal government who occupy positions subject to the Classification Act of 1923, as amended: Provided further, That such extension shall not apply to (a) those whose wages are fixed on a daily or hourly basis and adjusted from time to time in accordance with prevailing rates by wage boards or similar administrative authority serving the same purpose, (b) elected officials, (c) heads of departments, independent establishments and agencies, and (d) employees outside the continental limits of the United States, including Alaska, who are paid in accordance with local prevailing native wage rates for the area in which employed: Provided further, That overtime compensation authorized herein and under the Act approved February 10, 1942

legislation was made applicable to all civilian employees of the Government except four named classes, the only pertinent one of which was "(a) those whose wages are fixed on a daily or hourly basis and adjusted from time to time in accordance with prevailing rates by wage boards or similar administrative authority serving the same purpose." Since the plaintiff's wages were not fixed "on a daily or hourly basis" but by the month, the Government urges that the exception does not apply to the plaintiff and he is covered by the statute. The plaintiff urges that this legislation, by extending the termination date of certain earlier legislation, including the Act of October 21, 1940, supra, left that act intact, including, as the plaintiff urges, its non-coverage of the plaintiff. We have held above, however, that the 1940 act did apply to the plaintiff. The plaintiff points to statements made by a sponsor of the legislation that it was not to apply to wage-board employees. He points to statements in committee reports indicating, not too plainly, that the legislation was to apply only to per annum employees. We think these bits of legislative history are not strong enough to cause us to broaden the exception which we have quoted, so that it will take a monthly paid wage-board employee out of the coverage of the Joint Resolution. If, then, the plaintiff was within the terms of the Joint Resolution by reason of its extending further the termination date of the Act of October 21, 1940, was he also covered by the provisions of the Joint Resolution which authorized over-time to be computed only on so much of one's salary as did not exceed $2,900 per year and which set $5,000 as the maximum which an employee could receive in a year? The $5,000 limitation would, if applicable, not affect the plaintiff's case. We think the $2,900 provision is applicable to the plaintiff. The proviso is not limited to persons employed on an annual basis; the Act of October 21, 1940, which the Joint Resolution continued in effect covered not only monthly and other wage-board employees but professional and other annual employees; the translation of a monthly wage such as the plaintiff's into an annual wage would present no difficulty; hence the language of the $2,900 limitation is logically and practically applicable.

■ Again we have the question whether the plaintiff should receive "true overtime" or limited overtime for the period during which the Joint Resolution of December 22, 1942, was the law. We think he should receive true overtime. There was nothing in the Joint Resolution which affected whatever rights he may have had in that regard under the earlier legislation which the Joint Resolution continued in effect. We have held above that under that earlier legislation the plaintiff was entitled to true overtime. We conclude, therefore, that for the period covered by the Joint Resolution of December 22, 1942, that is, from December 1, 1942, through April 30, 1943, the plaintiff should have been paid true overtime for all work in excess of 40 hours per week, but computed

---

(Public Law Numbered 450, Seventy-seventh Congress), and section 4 of the Act approved May 2, 1941 (Public Law Numbered 46, Seventy-seventh Congress), as amended, shall be payable only on that part of an employee's basic compensation not in excess of $2,900 per annum, and each such employee shall be paid only such overtime compensation or portion thereof as will not cause his aggregate compensation to exceed a rate of $5,000 per annum: And provided further, That officers or employees whose compensation is based on mileage, postal receipts, fees, piecework, or other than a time period basis or whose hours of duty are intermittent, irregular, or less than full time, substitute employees whose compensation is based upon a rate per hour or per day, and employees in or under the legislative and judicial branches, shall be paid additional compensation, in lieu of the overtime compensation authorized herein, amounting to 10 per centum of so much of their earned basic compensation as is not in excess of a rate of $2,900 per annum, and each such employee shall be paid only such additional compensation or portion thereof as will not cause his aggregate compensation to exceed a rate of $5,000 per annum.

* * * * * * *

"Sec. 4. This joint resolution shall take effect as of December 1, 1942, and shall terminate on April 30, 1943, or such earlier date as the Congress by concurrent resolution may prescribe."

only upon that part of his basic compensation which did not exceed $2,900 per year.

The next legislation in question is the War Overtime Pay Act of 1943, Act of May 7, 1943, 57 Stat. 75. We print the pertinent parts of the act in a footnote.[5] We think this act applies to the plaintiff. The language in parentheses near the beginning of the part of the act which we have quoted plainly describes and expressly includes employees such as the plaintiff. Section 5 of the act expressly repeals two earlier statutes and Section 6 suspends the operation of another. The plaintiff argues from these facts that if Congress had intended to repeal or suspend Section 23 of the Act of March 28, 1934, it would have named that legislation in Section 5 or 6. But in Section 7 of the 1943 act Congress named several other acts providing for overtime pay and said that the 1943 act should not prevent the payment for overtime in accordance with those acts. The Government, naturally, argues that if Congress had intended that employees such as the plaintiff should receive overtime according to the 1934 act, it would have named that act in Section 7. We think that the inferences sought to be drawn from Sections 5 and 6 by the plaintiff, and from Section 7 by the Government, cancel each other and leave us without help from these sections. We therefore return to the text of Section 1 which, as we have said, covers the plaintiff. But the plaintiff urges that Congress did not intend to include him, and gives much legislative history which, he asserts, shows that intent. The only part of the legislative history which is significant, we think, is that when the Senate Committee was considering a bill

5 " * * * That this Act shall apply to all civilian officers and employees (including officers and employees whose wages are fixed on a monthly or yearly basis and adjusted from time to time in accordance with prevailing rates by wage boards or similar administrative authority serving the same purpose, except those in or under the Government Printing Office or the Tennessee Valley Authority) in or under the United States Government, including Government-owned or controlled corporations, and to those employees of the District of Columbia municipal government who occupy positions subject to the Classification Act of 1923, as amended, except that this Act shall not apply to (a) elected officials; (b) judges; (c) heads of departments, independent establishments, and agencies; (d) officers and employees in the field service of the Post Office Department; (e) employees whose wages are fixed on a daily or hourly basis and adjusted from time to time in accordance with prevailing rates by wage boards or similar administrative authority serving the same purpose; (f) employees outside the continental limits of the United States, including Alaska, who are paid in accordance with local prevailing native wage rates for the area in which employed; (g) officers and employees of the Inland Waterways Corporation; and (h) individuals to whom the provisions of section 1 (a) of the Act entitled 'An Act to amend and clarify certain provisions of law relating to functions of the War Shipping Administration, and for other purposes,' approved March 24, 1943 (Public Law Numbered 17, Seventy-eighth Congress), are applicable. As used in this section the term 'elected officials' shall not include officers elected by the Senate or House of Representatives who are not members of either body.

"Sec. 2. Officers and employees to whom this Act applies and who are not entitled to additional compensation under section 3 shall be paid overtime compensation computed on the same basis as the overtime compensation which was authorized to be paid under Public Law Numbered 821, Seventy-seventh Congress: Provided, That such overtime compensation shall be paid only on the portion of an officer's or employee's basic rate of compensation not in excess of $2,900 per annum: Provided further, That such overtime compensation shall be paid on such portion of an officer's or employee's basic rate of compensation notwithstanding the fact that such payment will cause his aggregate compensation to exceed a rate of $5,000 per annum: And provided further, That in lieu of overtime compensation for work in excess of forty-eight hours in any administrative workweek, the heads of departments, establishments, and agencies may in their discretion grant per annum employees compensatory time off from duty.

* * * * * * *

"Sec. 14. This Act shall take effect on May 1, 1943, and shall terminate on June 30, 1945, or such earlier date as the Congress by concurrent resolution may prescribe."

110

which did not, as the bill finally enacted did, expressly include monthly wage-board employees, it was called to the attention of the committee that the Comptroller General had ruled, 22 Comp.Gen. 596, 598, that such employees were not covered by the Joint Resolution of December 22, 1942, and had previously ruled that they were not covered by Section 23 of the Act of March 28, 1934, 13 Comp.Gen. 267; 14 Comp.Gen. 156, 164; hence they would get no overtime at all unless they were included in this bill. Hearings before the Senate Committee on the Civil Service on S. 635, 78th Cong., 1st Sess. pp. 52, 53, 70. The language expressly including them in the bill was thereafter inserted as a committee amendment. This history seems to us to show that the language of inclusion in the bill was an expression of a clearly held intent. The existence of the intent was due to a misapprehension by Congress as to the existing legal rights of monthly wage-board employees, which misapprehension was not removed until the decisions of this court and the Supreme Court in the Townsley case, supra, were made. But, as we have said earlier in this opinion, we cannot reform a statute because of a mistake of fact or law under which Congress labored when it enacted it.

The plaintiff's rights being governed by the 1943 act, it becomes necessary to determine what that act provided. In Section 2 it said that employees to which it applied should be paid "overtime compensation computed on the same basis as the overtime compensation which was authorized to be paid under" the Joint Resolution of December 22, 1942. It also said that overtime should be paid only on the portion of an employee's pay not in excess of $2,900 a year. We have, then, the same two questions which we have considered above in connection with the period of the plaintiff's employment covered by the Joint Resolution. We conclude therefore, that during the period when the War Overtime Pay Act of 1943 was applicable, that is, from May 1, 1943, through June 30, 1945, the plaintiff should have been paid true overtime for all work in excess of 40 hours per week, but computed upon only that part of his basic rate of compensation not in excess of $2,900 per annum.

The plaintiff is entitled to recover. Entry of judgment will be withheld to await the filing by the parties of a stipulation showing the amount due the plaintiff, computed for the period from August 15, 1940, through October 20, 1940, on the basis of Section 23 of the Act of March 28, 1934, and for the periods between July 1, 1941, and June 30, 1945, on the basis set forth in this opinion.

It is so ordered.