MARR v. UNITED STATES.*

ERBELE v. UNITED STATES.
No. 50102.

LITTLEJOHN v. UNITED STATES.
Nos. 50015, 50032, 50102.

United States Court of Claims
July 15, 1952.

---

* Motion for new trial pending.

Eugene Meacham, Washington, D. C., Robert Burns Poe, Tacoma, Wash., on the brief, for plaintiff Marr.

No appearance for plaintiff Erbele.

Harry M. Rubin, Jr., Washington, D. C., Thomas J. O'Leary, Olympia, Wash., and Nicholas J. Chase, Washington, D. C., on the brief, for plaintiff Littlejohn.

Kendall M. Barnes, Washington, D. C., Holmes Baldridge, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

MADDEN, Judge.

This opinion covers the three above-entitled cases. They all involve the same legal question. For convenience of exposition, all references in the opinion will be to the case of Retta A. Marr, Administratrix, as if that were the only case under consideration.

The plaintiff's intestate was employed by the Alaska Road Commission during the period January 1, 1935, to March 5, 1945, He presented a claim to the Comptroller General for overtime pay to which he claimed to be entitled pursuant to Section 23 of the Act of March 28, 1934, 5 U.S. C.A. § 673c. The claim was referred to the Alaska Road Commission by the Comptroller General for administrative review and recommendation and, upon receipt of that recommendation, the Comptroller General "settled" the claim in the sum of $3,862.34. The Comptroller General's communication to the plaintiff's intestate dated October 31, 1949, said, *inter alia*:

"I have certified that there is due you from the United States, payable from the appropriation(s) indicated, the sum of—

Three Thousand Eight Hundred Sixty-Two and 34/100 Dollars ($3,862.34)

on account of adjustment of compensation for overtime services rendered from May 10, 1938 to March 5, 1945, as an employee of the Department of the Interior, Alaska Road Commission, Juneau, Alaska.

\* \* \* \* \* \*

"Certificate to cover this settlement will be transmitted to the paying office and check in payment should be received in due course unless otherwise indicated hereon.

"The appropriation from which this claim is payable is no longer available. The amount allowed herein will be forwarded to you when appropriation shall have been made by Congress.

\* \* \* \* \* \*

"Inasmuch as claim was not received until May 10, 1948, consideration of your claim for the period January 1, 1935, to May 10, 1938, is barred, since under the Act of October 9, 1940, 54 Stat. 1061 [31 U.S.C.A. §§ 71a, 237], such claim must have been submitted within ten full years after the date of such claim first accrued."

The Alaska Road Commission, in its appropriation estimates for the fiscal year 1951, included a request for funds to be used to pay the claim of the plaintiff's intestate and others similarly situated, in the amounts approved by the General Accounting Office. Such funds were not appropriated, the Committees of Congress expressing the opinion that the claims should be submitted to this Court. H.Rep. No. 1797, 81st Cong., 2d Sess., p. 180 (Report to accompany H.R. 7786). On October 19, 1950, the Alaska Road Commission advised the plaintiff of the foregoing action of the Appropriations Committees, and advised her that her only further recourse was a suit in this court.

The Government moves to dismiss the plaintiff's petition saying that her suit is barred by the Statute of Limitations, 28 U.S.C.A. § 2501, since it was not filed until January 24, 1951, which was more than six years after the last date upon which the plaintiff's intestate performed any of the services for which overtime pay is sought, except for the last forty days before March 5, 1945. As to this short period, the Government does not claim that the Statute of Limitations is a bar.

The plaintiff asserts that she is not suing upon the original claim for overtime wages, most of which claim did accrue more than six years before the suit was filed, but on the account stated by the Comptroller General on October 31, 1949.

Section 23 of the Act of March 28, 1934, intended by Congress to give manual workers employed by the United States overtime pay for work in excess of forty hours a week, was misinterpreted by the administrative and fiscal officers of the Government. Many employees who were entitled to its benefits were denied them, as a result of that misinterpretation. Although Section 23 was enacted in 1934, it was not until 1945 that the first of the several cases giving judicial construction to Section 23 was reached and decided by the Supreme Court. United States v. Townsley, 323 U.S. 557, 65 S.Ct. 413, 89 L.Ed. 454, affirming 101 Ct.Cl. 237. Other cases in this court construed Section 23 as applied to other classes of employees. Hearne v. United States, 1946,

68 F.Supp. 786, 107 Ct.Cl. 335; Gray v. United States, 1948, 76 F.Supp. 102, 110 Ct.Cl. 661; Poggas v. United States, 1950, 93 F.Supp. 1009, 118 Ct.Cl. 385. The employees who prevailed in these cases, after strenuous and expensive litigation, nevertheless lost a good deal of what they were entitled to because the Statute of Limitations had barred the earlier period of their claims before their suits were brought. There is nothing in the history of the Government's treatment of the employees intended to be benefited by Section 23 to which the Government can point with pride.

■ In the instant case the Government pleads the Statute of Limitations, as to all except an insignificant fraction of the claim, although the claim has been certified as meritorious by the employing agency, the Alaska Road Commission, and by the Comptroller General. We can judicially notice that the plaintiff's intestate was not culpably dilatory in the assertion of his claim. As appears from the cases cited above, numerous rulings were obtained by representatives of employees as to the applicability of Section 23. It should not be necessary for a manual worker for the Government to have to have a lawyer at his elbow on pay day. In Hearne v. United States, supra, we commented, 68 F.Supp. 786, 107 Ct.Cl. at page 400, on the Government's contention that the employees in that case were guilty of laches.

Enlightened, then, as to his probable rights under Section 23 by the decisions which had been rendered up to that time, the plaintiff's intestate on May 10, 1948, submitted his claim to the Comptroller General. He had already lost all of his overtime pay for work which preceded May 10, 1938, because of the statute forbidding the Comptroller General to consider claims more than ten years old. But as to the rest of the claim, he got, a year and a half later, an unqualified statement that the money was due him. But, naturally, the appropriations for the years when he did the work were no longer available, so the approval did not bring him any money. The plaintiff contends that it did give to her intestate a new cause of action. If it did, her suit is timely.

The Act of June 10, 1921, c. 18, sec. 305, 42 Stat. 24, 31 U.S.C.A. § 71, says:

"All claims and demands whatever by the Government of the United States or against it, and all accounts whatever in which the Government of the United States is concerned, either as debtor or creditor, shall be settled and adjusted in the General Accounting Office."

Section 304 of the Act, 31 U.S.C.A. § 44, says:

" * * * The balances certified by the Comptroller General shall be final and conclusive upon the executive branch of the Government."

█ The claim of the plaintiff's intestate extended back over many years. It had not been paid because of erroneous interpretations of Section 23. Some parts of it were already barred by limitation when it was, in 1948, presented to the Comptroller General. Whether the Government would recognize any of it, and if so, how much, was in doubt. The Comptroller General, the officer authorized by statute to "settle and adjust" such claims deliberated over it, denied some of it, and stated that the balance would be paid. The plaintiff's intestate and, in her turn, the plaintiff, offered no objection to the proposed settlement. We have no doubt that they were in an assenting frame of mind and that their silence signified their assent. By the settlement they were to get a substantial sum of money on a claim which the Government had, for some fourteen years, refused to recognize at all. So of course they were agreeable to the settlement.

We have, then, the elements of an accord which merged out of the claim upon which it was based, regardless of its merits, and created a new promise to pay based upon the accord.

█ The Government cites decisions of this court such as L. E. Myers Co. v. United States, 64 F.Supp. 148, 105 Ct.Cl. 459, to the effect that the pendency of a claim before an executive agency, after the work upon which the claim is based has been completed, does not toll the Statute of Limitations as to suits in this court. But that is not our problem. If the plaintiff's intestate in this case had not reached an ac-

cord with the Government acting through the Comptroller General, the plaintiff's claim would be barred by the Statute of Limitations. But the line of cases illustrated by the Myers case contains no doctrine that it is not possible for the Government to reach an accord with a claimant, thus merging out the plaintiff's original claim, and such defenses as the Government might have had, but for the accord, and setting the Statute of Limitations running anew upon the newly created cause of action. It would seem logical and necessary that an institution involved in so many affairs as is the Government should have the power which every private citizen has of arriving at a settlement and accord with its creditors. Such a power was recognized in Bonwit Teller & Co. v. United States, 283 U.S. 258, 51 S.Ct. 395, 75 L.Ed. 1018.

The Government urges that the fact that the statute, 31 U.S.C.A. § 71a, provides that claims may be filed in the General Accounting Office within ten years after the accrual of the claim would mean that a claimant might have as much as sixteen years from the accrual of the claim to file suit in this court, if our six-year statute were not held to be a bar. But, as we have said above, the six-year statute on the original claim was running from the date of the accrual of the claim, and the original claim, as such, is now barred. The fact that it had been presented to the General Accounting Office within the six years would not extend the time for filing suit on it in this court. But the Comptroller General had express statutory authority to consider it if filed in his office within ten years. If he had denied the claim, that would have been the end of it. But he agreed that a part of the claim was owed by the Government, and advised the plaintiff that the Government would pay it. Congress gave the Comptroller General the authority to settle a claim which might, four years before, have been barred from judicial enforcement by the Statute of Limitations. It did not indicate that an accord reached by him in those circumstances should have other than its normal legal consequences.

The Government relies on McKnight v. United States, 13 Ct.Cl. 292. In that case the Comptroller of the Treasury certified

that $30,675.68 was due to the claimants' assignor for supplies furnished but, while the matter was still inside the department, the Secretary of the Treasury directed that $9,000 of the amount be paid into the Treasury on account of another transaction with the claimants' assignor. The balance was paid to the claimants. After the six-year statutory period, they sued for the $9,000. They of course had no promise that the $9,000 would be paid them. The very departmental action on which they relied denied it to them. So they were held to be barred by the Statute of Limitations. If they had not had that obstacle to recovery they would, the court said, have been barred by the illegality of the assignment to them. The case does not hold that no one in the Government, not even the one who · is expressly authorized by statute to "settle and adjust" claims against the Government, may enter into a binding accord with a creditor of the Government.

The Comptroller General's statement that the claim would be paid when appropriated money was available was a mere statement of an obvious fact and did not make the accord conditional. That the money could not be paid unless an appropriation was available was the consequence, not of the Comptroller General's statement, but of the law.

The Committee of Congress, in failing to appropriate money to fulfill the Comptroller General's promise, was probably not aware that this court could not adjudicate the original claim on the merits, because it was barred by the Statute of Limitations. We see in the Committee's action no indication that it was unwilling that the law, including the law of compromise of claims by accord, should take its regular course.

The Government's motions for summary judgment are denied. Only the plaintiff Marr has filed a motion for summary judgment. But we think all three cases are ready for decision, and we treat them as if the other two plaintiffs had filed such motions. Each plaintiff is entitled to recover, but entry of judgments is suspended to await the filing of reports from the General Accounting Office showing the amounts due.

JONES, Chief Judge, and HOWELL and LITTLETON, Judges.

WHITAKER, Judge (dissenting).

I regret I am unable to agree with the decision of the majority of the court. Plaintiffs should have their money, but I do not think this court has jurisdiction to give it to them.

Our jurisdiction is limited to the consideration of claims presented within six years from the time they accrue. Plaintiffs original claims accrued many years prior to the beginning of the six-year period, but, in an effort to come within the six-year statute, they say the "settlement" of their claims by the Comptroller General amounted to an account stated, and that on this they are entitled to sue within six years from the date of the statement of the account.

A suit can be brought on an account stated within six years from the · statement thereof because from the statement and the agreement thereto by both parties there arises an implied promise to pay the amount agreed upon. Plaintiffs' suits, therefore, are not on their original claims, but upon the implied promise arising out of the agreement on the amounts due.

But here there was no implied promise; instead, there was an express promise. That promise was to pay the amount agreed upon, subject to an appropriation thereof by another agency of the defendant, to wit, the Congress of the United States. When the matter was presented to the Congress, that agency refused to make the appropriation.

The Comptroller General alone could not bind the defendant; it took the concurrence of Congress, and Congress did not concur. Therefore there has been no promise to pay within six years prior to the time these suits were brought and, hence, I think this court is without jurisdiction to entertain plaintiffs' claims.

Their only recourse, it seems to me, is an appeal to Congress.