JONES, Chief Judge, and MADDEN, WHITAKER and LITTLETON, Judges, concur.

**SCHENLEY IMPORT CORP.**
**v.**
**UNITED STATES.**

**SCHENLEY IMPORT CORP. et al.**
**v.**
**UNITED STATES.**

**MANY, BLANC & CO., Inc.**
**v.**
**UNITED STATES.**

**JOSEPH S. FINCH & CO.**
**v.**
**UNITED STATES.**

Nos. 570–53, 571–53, 572–53, 573–53.
United States Court of Claims.
June 8, 1953.

Norman J. Morrison, Washington, D. C., for plaintiffs. William Montgomery Smith, Washington, D. C., was on the briefs.

Benjamin H. Pester, Washington, D. C., with whom was Asst. Atty. Gen. H. Brian Holland, for defendant. Ellis N. Slack and Andrew D. Sharpe, Washington, D. C., were on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

MADDEN, Judge.

In these cases the plaintiffs seek to recover the unused portions of deposits made by them with the Government to secure the payment of internal revenue taxes on liquors which they imported. The taxes which were ultimately assessed used up the greater part of their deposits, but there were sums left over which they were entitled to get back. The Government says they lost their right to get them back because they did not demand them within the time fixed by a statute.

When distilled spirits are imported into the United States they are placed in a Customs Bonded Warehouse. When they are withdrawn from the warehouse, a Customs Duty is payable and also an internal revenue tax. For the convenience of the importer and the security of the Government, the importer may make a deposit of the estimated amount of the duties and taxes which will be due when the spirits are withdrawn. That deposit having been made, the importer can, at his will, withdraw a part or all of the spirits, and the Collector of Customs can measure the withdrawals and charge the appropriate taxes against the importer's deposit of money. When the last withdrawal is made, the Collector of Customs "liquidates" the account, that is, he determines how much of the deposit has been consumed by the taxes and posts the account showing the balance refundable to the importer.

As the practice was at the times here involved, the Collector of Customs turned over his statement of account to the Comptroller of Customs for verification, and he in turn notified the Commissioner of Internal Revenue of the excess. Perhaps this notice to the Commissioner was given to enable him to make a claim against the fund for any other unpaid internal revenue taxes which his records might disclose.

The Collector of Customs, no exception having been taken to his account by the Comptroller of the Customs or the Commissioner of Internal Revenue, mailed on Customs Form 5269 a notice to the importer saying "There is a refund due you by the United States on" the transaction detailed on the form. Customs Regulations Section 24.36(e) as it was at the time here in question, required the importer to file a claim for refund for the balance of his deposit, and attach to the claim the Form 5269 which was to have been sent him by the Collector of Customs.

In several of the instant cases, Form 5269 was not sent to the importer until several years after the Collector of Customs had liquidated the account. The importers thereupon promptly filed claims for refund, which were denied by the Commissioner of Internal Revenue upon the ground that they had not been filed within four years after liquidation of the accounts by the Collector of Customs. Section 3313 of the Internal Revenue Code, 26 U.S.C.A. § 3313, provides that claims for refund of internal revenue taxes of the kind here involved must be filed within four years after the payment of the taxes.

The Government defends these cases on the ground taken by the Commission-

er of Internal Revenue in his denial of the claims for refund. The plaintiffs urge that Section 3313 is not applicable, because the funds here claimed were not

"any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty alleged to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected"

which are the things made subject by Section 3313 to a claim for refund.

■ We do not think that the funds here in question fit the language of the statute. They were money deposited with the Government for its security to create a fund out of which taxes could be paid as they came due. The taxes were paid out of it and the Government owed the rest of it to the plaintiffs, not as an excess collection of taxes or penalties, but as money not required to pay the plaintiffs' taxes, the amount of which was undisputed. See Rosenman v. United States, 323 U.S. 658, 65 S.Ct. 536, 89 L.Ed. 535; Thomas v. Mercantile Nat. Bank, 5 Cir., 204 F.2d 943.

■ The plaintiffs having induced us to agree with them on the above point, still have serious hurdles to surmount in some of the cases. If it was not necessary to file a claim for refund within four years, it was still necessary to file their suits in this court within six years, pursuant to Section 2501 of the Judicial Code, 28 U.S.C.A. In only two instances, those involved in Counts II and III of No. 573–53 were the suits, which were filed on October 21, 1953, filed within six years of the dates of the liquidation of the accounts. The plaintiffs say that their time began to run, not on the date of liquidation but on the date of the issuance to them of the notice of their right to a refund. They say that these notices constituted accounts stated, which gave them causes of action accruing on the dates of the notices. It will be remembered that the notices, which were expressly provided for in the Customs Regulations, said "There is a refund due you by the United States * * * as per the particulars described below." In several of the instances before us the notices were not sent out until more than six years after the date of liquidation. If the Government's contention that a claim for refund had to be filed within four years of the date of liquidation were correct, the notices, in frankness, should have added, "but you will never get it because it is already too late to file a claim for refund." And if, although, as we hold, no claim for refund was necessary, the statute of limitations had been running from the date of liquidation, a similar discouraging addendum should have appeared. Customs Regulations Section 24.36(e), referred to above, required the importer to attach Form 5269 to his claim, in order to get his deposit back. The Government, not having supplied the plaintiffs with Form 5269, cannot assert that the money was due and the statute of limitations was running from the dates of liquidation of the accounts. We think the notices were an honest accounting by a depositary of the plaintiffs' funds of what the accounts showed on those dates, and were promises to pay the amounts stated. See Bonwit Teller & Co. v. United States, 283 U.S. 258, 51 S. Ct. 395, 75 L.Ed. 1018; Marr v. United States, 106 F.Supp. 204, 123 Ct.Cl. 474, certiorari denied 345 U.S. 956, 73 S.Ct. 937, 97 L.Ed. 1377.

■ In No. 572–53, liquidation occurred on November 10, 1944, the notice of refund due was issued on January 12, 1945 and the suit was filed on October 21, 1953. It was filed too late. The plaintiff says that it lost the notice and obtained a duplicate of it on July 16, 1952. The issuance of a duplicate copy of a promise, at the request of the creditor, is not a new promise to pay the debt. It merely supplies the creditor with desired evidence of the old promise. The plaintiff is barred by the statute of limitations. The same is true of Count I of No. 573–53.

The plaintiff in No. 570–53 is entitled to a judgment for $711.60. In No. 571–53, the plaintiff Schenley is entitled to

a judgment for $23,269.50, and the plaintiff Finch to a judgment for $15,388.20. The petition in No. 572–53 is dismissed. In No. 573–53, Count I of the petition is dismissed. On Counts II and III, the plaintiff may have a judgment for $39,457.44.

It is so ordered.

JONES, Chief Judge, and LARAMORE, WHITAKER and LITTLETON, JJ., concur.