**KELLY et al. v. UNITED STATES.**

No. 49299.

United States Court of Claims.

April 3, 1951.

Whitaker, J., dissented.

Henry J. Fox, Washington, D. C. (Posner, Berge, Fox & Arent, Washington, D. C., on the briefs), for plaintiff.

Kendall M. Barnes, Washington, D. C., Newell A. Clapp, Acting Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

MADDEN, Judge.

This is a suit brought by 614 employees of the Government Printing Office to recover additional compensation for work performed by them on holidays during the period from September 1, 1943 to October 15, 1945. Pursuant to Rule 9(a) of the Court, 28 U.S.C.A., the parties have stipulated the facts as to one of the plaintiffs only, John Stuart Kelly, and have further stipulated that the decision on Kelly's claim will be determinative of all common questions of law and fact involved in the claims of the 613 other plaintiffs.

If one is paid by the year, or the month or the week, and is fortunate enough to have a holiday, it does not reduce the amount of his pay check. But if he is paid by the day or the hour, the natural consequence of his not working on a holiday is that he gets paid for one less day than he would have been paid for if he had worked on the holiday. This normal result can be changed by agreement of the employer and the employees, or by law. It is frequently provided in union agreements with employers that workmen who are paid by the day or the hour should have certain holidays off, but should be paid as if they had worked. Under such an agreement, the workman receives as much pay at the end of a week in which there was a holiday as he receives at the end of a week in which there was no holiday.

The Government has both kinds of employees, those, mostly white collar employees, who are paid by the year, and craftsmen who are paid by the day or the

hour. As to the per annum employees, when by law certain days were made holidays, their pay was not affected. But the per diem and per hour employees lost their wages for the day off, until special provision was made that they should be paid for it.

By the Act of April 16, 1880, 21 Stat. 304, it was provided that employees of the Government Printing Office should be paid for five named holidays provided other Government employees were paid for those days. The proviso seems to have been interpreted to mean "if the holiday fell on a day which would otherwise have been a working day." The Joint Resolution of January 6, 1885, No. 5, 23 Stat. 516, as amended by the Joint Resolution of February 23, 1887, No. 6, 24 Stat. 644, 5 U.S. C.A. § 86, granted five named holidays to all *per diem* employees of the Government, and said that the employees should "receive the same pay as on other days". The Act of January 12, 1895, C. 23, Section 46, 28 Stat. 607, 44 U.S.C.A. § 44 granted eight named holidays "with pay" to employees of the Government Printing Office. The parties have stipulated that, beginning with the Act of 1895, Government Printing Office employees were paid for these holidays whether the holidays fell on what would otherwise have been a work day or not. This fact is important in a relation which will appear hereinafter. The parties have further stipulated that, apparently beginning about 1895, if a Government Printing Office employee worked on a holiday, he received a regular day's pay in addition to the holiday statutory pay. This administrative construction of the 1895 Act was confirmed by the Comptroller of the Treasury in 1901, 8 Comp.Treas. 322, and in 1906, 13 Comp.Treas. 40. This Court, in a dictum in Adams v. United States, 42 Ct. Cl. 191, 212, in 1907 agreed with those rulings.

The practice just recited was followed until October 27, 1924, when in a wage agreement negotiated between the Public Printer, who was the head of the Government Printing Office, and a committee of the employees, it was provided that employees required to work on a legal holi-day should be paid at time and one-half the day rate in addition to their "gratuity pay" for the holiday as provided by law. The only change effected by the agreement was the addition of the half time to the straight time which the employees were already receiving when they worked on a holiday, in addition to the statutory pay for the holiday which they had been receiving, and continued to receive, whether they worked or not. The word "gratuity" used in the agreement was inaccurate. It was no more a gratuity or tip to these employees than it is to any other employee, public or private, to have a holiday off without reduction of his pay. It is a part of what he agreed to, or of what the law gives him, and he is as much entitled to it as he is to the rest of his pay.

The 1924 agreement was adhered to until 1934, when, under a ruling of the Comptroller General, it was departed from by the Government in a way prejudicial to the employees, which departure constitutes one branch of the claim involved in this case, and will be discussed hereinafter. At the moment we merely say that, beginning in 1934, the practice went back to what it was before 1924, that is, that the employee who worked on a holiday was paid straight time for his work, in addition to the statutory holiday pay which he would have received even if he had not worked.

On December 6, 1937, the President, by Executive Order No. 7763, excused all Federal employees from work on December 24, 1937. Employees who had per annum salaries were, of course, paid their salaries without deduction for that day off. But employees paid by the day received no pay for that day, so the Comptroller General ruled, because that day was not one of the eight holidays named in the statute giving such employees holidays with pay. A House Joint Resolution, No. 551, was introduced to provide that per diem employees who had not worked on December 24, 1937, should be paid. The House Committee on the Civil Service requested the comments of the Civil Service Commission on the proposed legislation. The reply of the President of the Commission is quoted in the report of the House Committee, H.R.

No. 2683, 75th Cong., 3d Sess. 5 (1938). His reply suggested that, instead of enacting special legislation to pay employees each time that a holiday was declared by Executive Order, a permanent statute should provide that, in addition to the holidays named in existing statutes, any day declared a holiday by Executive Order should be a paid holiday for all Federal employees whose compensation is fixed on a per diem, per hour, or piece-work basis.

The House Committee report referred to above also quoted the letter decision which the Acting Comptroller General had given to the Secretary of the Navy on December 20, 1937, to the effect that per diem employees could not, under existing legislation, be paid for the December 24, 1937, holiday proclaimed by Executive Order. In that decision it was pointed out that such employees, under existing legislation, were often paid for holidays which occurred on Saturdays or Sundays when the employees would not have worked or been paid if the day had not been a holiday. In that regard the per diem employees were treated better than per annum employees, since, although they worked only the same number of days in such weeks as the per annum employees, they drew one more day's pay in such weeks than they did in other weeks. In other words, the mere occurrence of the holiday, although they did not work on the holiday, increased their pay for the week.

The letter from the Civil Service Commission, referred to above, contained a suggested text for the new legislation, which text was adopted verbatim by the House Committee, and became Public Resolution No. 127, 75th Cong., 3d Sess. approved June 29, 1938; 52 Stat. 1246; 5 U.S.C.A. § 86a, reading as follows:

Hereafter, "whenever regular employees of the Federal Government whose compensation is fixed at a rate per day, per hour, or on a piece-work basis are relieved or prevented from working solely because of the occurrence of a holiday such as New Year's Day, Washington's Birthday, Memorial Day, Fourth of July, Labor Day, Thanksgiving Day, Christmas Day, or any other day declared a holiday by Federal statute or Executive order, or any day on which the departments and establishments of the Government are closed by Executive order, they shall receive the same pay for such days as for other days on which an ordinary day's work is performed.

"Sec. 2. The joint resolution of January 6, 1885 (U.S.C., title 5, sec. 86), and all other laws inconsistent or in conflict with the provisions of this Act are hereby repealed to the extent of such inconsistency or conflict."

As shown in Finding 10, on August 15, 1938, the Public Printer requested the opinion of the Comptroller General as to whether employees who would be required to work on September 5, Labor Day, one of the legal holidays named in the statute, might be paid for the day, in addition to the holiday pay that they would receive if they did not work. The Comptroller General on August 23 replied in the negative, 18 Comp.Gen. 191, saying that the former practice was forbidden by the June 29, 1938, legislation. He said that employees required to work on a holiday were not "relieved or prevented from working solely because of the occurrence of a holiday" within the meaning of the 1938 statute. Pursuant to the Comptroller General's ruling, the plaintiffs, employees in the Government Printing Office, who have been required to work on holidays have received exactly the same pay as those who were not required to work.[1] This is obviously surprising. Our problem is to determine whether it is lawful.

One has immediate doubts as to whether Congress, in 1938, intended to take away from this class of Government employees these rights which they had enjoyed at least since 1895. And when one examines the origin and purpose of the legislation, he finds not the remotest intimation of any such intent. The resolution as originally introduced provided merely that per diem employees should be paid for the December 24, 1937, special holiday. It was amended so that it would serve as permanent leg-

---

1. But see note 4 to Finding 10.

islation for all such occasions. The Civil Service Commission and the House Committee in enlarging the scope of the resolution obviously had noted the Comptroller General's comment, quoted in the committee report, that the existing legislation had been so interpreted as to give employees pay for a holiday coming on a day when they would not have worked anyway. To prevent that unduly generous treatment, the language "whenever * * * employees * * * are relieved or prevented from working solely because of the occurrence of a holiday" was inserted. The words were apt for that purpose. Hence we are not asked by the plaintiffs to disregard, or nullify, words of a statute on the ground that Congress used them inadvertently. They had a purpose and were, for that purpose well chosen. We are asked only to hold that they should not be given an additional application, which, taken literally, they could receive, when all the indications are that they were not meant to have it.

With regard to its per diem and per hour employees, the so-called wage board employees, the Government is in competition with private employers, and attempts to keep its wages and working conditions in step with those in private enterprise. It is completely unthinkable that the owner of a printing shop could, by practice, or by contract, maintain the policy as to holiday pay which the Government here seeks to attribute to Congress. Such an employer might, and many employers did, in 1938, have a policy of not paying for holidays not worked. If the holiday was worked, it was paid for. Some such employers then, and most of them now have contracts with their employees providing for paid holidays, but in all such contracts there is a provision that if the holiday is in fact worked, it will be paid for again, usually at premium pay, and in addition to the holiday pay. But in no case which we have heard of, or can imagine, could an employer maintain a practice whereby an employee who worked on a holiday received merely the same pay as one who did not work.

This being the situation, we think that the administrative officers of the Government and the courts have no duty, and indeed no right, to attribute to Congress an intention which, it is morally certain, Congress did not have, by giving to words which Congress used for one obvious purpose, an additional application which, taken literally, they might support. The evil which Congress meant to cure by the words it used, it cured. The additional effect contended for by the Government would destroy a practice which no one had ever even intimated to be an evil, and which responsible officials had, for more than forty years regarded as just and necessary.

The Government suggests that the fact that per annum employees at that time, received no extra pay when they were required to work on a holiday was a discrimination, which the Government's interpretation would eliminate. But that difference had existed for some forty-five years, no mention had been made of it in connection with this legislation, and there is no basis whatever for thinking that Congress intended to treat it. It was apparently, a recognized difference between the status of a per annum employee with his relatively secure tenure, and a per diem craftsman.

■ We conclude, therefore, that the Public Resolution of June 29, 1938, did not deny to the plaintiff Kelly his right to holiday pay in addition to the pay earned by him when he worked on holidays. From what we have said it will be gathered that we do not agree with the Government's argument that the repealer provision of the 1938 Resolution, in some way not quite clear to us, supports the Government's interpretation of the Resolution.

■ We now consider the second branch of the plaintiff Kelly's claim. It involves the application of Section 23 of the Act of March 28, 1934, 48 Stat. 522, 5 U.S.C.A. § 673c which reads as follows: "The weekly compensation, minus any general percentage reduction which may be prescribed by Act of Congress, for the several trades and occupations, which is set by wage boards or other wage-fixing authorities, shall be re-established and maintained at rates not lower than necessary to restore

the full weekly earnings of such employees in accordance with the full-time weekly earnings under the respective wage schedules in effect on June 1, 1932: *Provided,* That the regular hours of labor shall not be more than forty per week; and all overtime shall be compensated for at the rate of not less than time and one half."

We have had occasion to consider Section 23 in earlier cases. Townsley v. United States, 101 Ct.Cl. 237, affirmed 323 U.S. 557, 65 S.Ct. 413, 89 L.Ed. 454; Hearne v. United States, 68 F.Supp. 786, 107 Ct.Cl. 335; Gray v. United States, 76 F.Supp. 102, 110 Ct.Cl. 661; Poggas v. United States, Ct.Cl., 93 F.Supp. 1009, rehearing denied Ct.Cl., 96 F.Supp. 609. A reading of this Section indicates that it was intended to improve the conditions of working men, and, no doubt, it has had that result. Consideration of the litigation concerning it makes it even clearer that it has improved the standard of living of many lawyers.

As we have said, the Public Printer, as he had the power to do under the Act of June 7, 1924, 43 Stat. 658, 44 U.S.C.A. § 40, made an agreement, effective October 27, 1924, with the employees in the Government Printing Office which provided that employees required to work on a holiday should receive time and one-half for the time worked, in addition to their "gratuity pay" for the holiday as provided by law. The employees were so paid until, on March 28, 1934, Section 23 was enacted. On April 9, 1934, the Public Printer requested an opinion from the Comptroller General as to whether the additional half time could continue to be paid. The Comptroller General replied, 13 Comp.Gen. 295 in the negative, saying, in effect, that the provision in Section 23, that time worked beyond 40 hours in a week should be overtime and should be paid for at time and one-half meant that no time within the forty hours could be paid for at more than straight time, even if it was worked on a holiday.

We think the Comptroller General's interpretation was erroneous. The time and one-half pay for work on holidays had no relation to overtime. It was penalty pay in the sense that it would discourage the employer from unnecessarily requiring work on holidays, and was premium pay in the sense that it rewarded the employee for giving up a holiday that his neighbors were enjoying. In the former respect it resembled overtime, and in the latter respect it resembled premium pay for work on a night shift, or on Sunday, when most people are not working. But it was not overtime in the sense in which that word is used in industry, or in any sense in which it has been consistently used by Congress.

We do not understand, and no explanation has been offered, why, if Section 23 struck down the provision of the 1924 agreement as to holiday pay, it did not likewise invalidate the provision of the same agreement for 15% additional premium pay for work at night, within the regular forty-hour week. This was "overtime", if the word is to be stretched, just as much as the premium holiday pay was, yet it was regarded as unobjectionable. See 23 Comp. Gen. 962.

In the Act of January 13, 1883, C. 23, 22 Stat. 402, it was provided: "That for extra work, ordered in emergencies, and performed on Sundays or legal holidays, or between the hours of midnight and eight antemeridian, excepting that done by regular organized night forces, the Public Printer is hereby authorized to pay such extra prices as the customs of the trade and the justice of the case may require."

Congress there authorized the Public Printer to award premium pay in a variety of situations, for work done at unusual times. There was no thought or mention of overtime, and, indeed, in 1883 there was probably no custom in Government or industry to pay any increased rate for work beyond regular daily or weekly hours.

In the Act of February 13, 1911, as amended, 41 Stat. 402, C. 61, 19 U.S.C.A. § 267, Congress referred to overtime services of Customs inspectors and other Customs employees and then went on to define such services as including night, Sunday, and holiday time. The Act of March 2, 1931, 46 Stat. 1467, 8 U.S.C.A. § 109a, relating to immigration inspectors used the word overtime in the same way, but defining what was meant.

616

In the Act of March 4, 1925, C. 549, § 1, 43 Stat. 1300, 44 U.S.C.A. § 75 it was provided: "Employees in the office of the Superintendent of Documents may be paid compensation for night, Sunday, holiday, and overtime work at rates not in excess of additional compensation for such work allowed to other employees of the Government Printing Office under the provisions of section 40 of this title."

Here it is plain that Congress did not regard holiday rates as overtime rates. But the fact that Congressional usage of the word has not been entirely consistent is no ground for assuming that in 1934, in aiming at an entirely different objective, Congress succeeded in striking down an arrangement which had been in effect for ten years, had not been criticized, and was not even remotely in the mind of Congress when it enacted Section 23.

On December 12, 1945, the Secretary of the Navy addressed an urgent plea to the Comptroller General, on behalf of the War and Navy Departments, saying that "inability to authorize a premium rate for holiday work has very seriously impaired the efficiency" of certain facilities of the services mentioned in the letter. In response the Comptroller General, on February 7, 1946, 25 Comp.Gen. 584, restudied the question. He recognized, p. 589, that a distinction between overtime pay and premium pay for holiday work had been maintained by commercial industry, and that such classes or categories of pay had been considered co-equal with, and independent of, each other. But, he thought, Congress had not made this distinction until it enacted the Federal Employees Pay Act of 1945, 59 Stat. 295, 296, 298, 5 U.S.C.A. § 901 et seq., where it provided in separate sections, 201 and 302 for overtime, and holiday pay respectively. The 1945 Act had no application here pertinent to employees such as the plaintiff Kelly. See Section 102(c). But the Comptroller General concluded that the recognition by Congress in the 1945 Act, though in an unrelated connection, of the difference between overtime pay and premium pay for holidays justified a new interpretation of the 1934 Act, the new interpretation being effective in 1945.

This process of interpretation, whereby the meaning of a 1934 statute is changed, only prospectively, in 1945 because Congress showed in 1945 that it then knew the correct meaning of words which it had used in 1934 is unusual. It would be preferable to infer that since Congress showed in 1945 that it knew the meaning of the words it had used in 1934, it had known it all the time, and that any mistake as to the meaning had not been that of Congress, but of the person who read the words and attributed the mistaken meaning to them. We conclude that Section 23, when enacted, and thereafter, had nothing to do with premium pay for holidays, and did not invalidate the agreement which the Public Printer had with his employees.

The Government urges that Kelly's right to sue is barred by laches. We think not. In Hearne v. United States, 68 F.Supp. 786, 107 Ct.Cl. 335, 400, this Court rejected a similar contention in a suit by an employee of the Panama Canal under Section 23. We said there that, in the confusion of administrative rulings with regard to the meaning of Section 23, it would be unfair to require a workman to know, at his peril, his statutory rights when the responsible officials of the Government could not see them clearly. In this case the doctrine of laches seems peculiarly inapplicable, since only holiday pay is involved, and it is hardly possible that the Public Printer could have avoided, to any substantial degree, the holiday work, even if he had known that the work would cost more than he supposed it would.

The plaintiff Kelly, having already received the equivalent of his statutory holiday pay, is entitled to recover, pursuant to the 1924 agreement, one and one half times the day rate for the holidays on which he worked. Entry of judgment will be suspended to await the filing of a stipulation of the parties showing the exact amount to which the plaintiff is entitled.

It is so ordered.

HOWELL and LITTLETON, Judges, concur.

WHITAKER, Judge (dissenting).

I cannot agree that plaintiff is entitled to two and one-half times his regular pay for work done on holidays. I agree that Section 23 of the Act of March 28, 1934, did not affect these workers' right to the day rate plus 50 percent for all holiday work; but I cannot agree they are also entitled to holiday gratuity pay. Their rights are governed by Public Resolution 127, approved June 29, 1938, 52 Stat. 1246, 5 U.S.C.A. § 86a, and this resolution gives them gratuity pay only when they are "relieved or prevented" from working on a holiday. It does not give them gratuity pay when they do work.

I conceive it to be our duty to abide by what Congress said and not by what we may think it meant to say. Where the language of an act is ambiguous, courts may have recourse to things extraneous of that language to determine the congressional intent; but where the language is plain, there is no warrant to go beyond it in order to show that Congress did not really mean what it said. Where the words used may mean one thing or another, then we may go behind them to ascertain which of the meanings was actually intended. But where language is susceptible of only one meaning, that meaning must be ascribed to it, even though it may seem strange to us that Congress should have had such an intent.

I think the 1938 resolution is clear and unambiguous and must be taken to mean just what it says. Under it these workers are entitled to receive holiday gratuity pay only when "relieved or prevented from working solely because of the occurrence of a holiday * * *." 52 Stat. 1246. Since these employees were not prevented or relieved from working on the holidays involved here, but on the contrary they worked on those days, they are not entitled to the gratuity pay in addition to holiday premium pay. The wage agreement provided that they were to receive the day rate plus 50 percent for holiday work "in addition to their gratuity pay for the holiday as provided by law"; but after June 29, 1938, gratuity pay was no longer provided by law for workers who actually worked on holidays. They were, however, still entitled to time and one-half, under the wage agreement.

The Resolution of 1938 was intended to correct the situation arising from the President's order excusing Federal employees from work on December 24, 1937. The Comptroller General had ruled that per diem employees could not be paid for that day because it was not one of the holidays specified by existing statutes for which an employee was entitled to gratuity pay. An Act was introduced to give them gratuity pay for that day only, to wit, December 24, 1937, but it was suggested by the Civil Service Commission that it would be better to pass an act applying to all holidays. A draft of such an act was enclosed in its communication to Congress. Congress adopted the suggestion and incorporated it in Public Resolution 127. This resolution gave gratuity pay only for holidays on which employees did not work.

The intention of the first of these resolutions passed in 1885 was to give per diem employees a day's pay for a holiday. Whereas employees paid on an annual basis received their regular pay whether they worked on a holiday or not, per diem employees did not. The original resolution was intended to put per diem workers on a parity with per annum employees. It was not intended to prefer them over per annum employees. A per annum employee who worked on a holiday received no extra compensation therefor.

The Resolution of 1938 carried out the intent of the original resolution and made it plain that per diem employees were entitled to gratuity pay only when they did not work on a holiday.

I do not agree that the congressional intention was different from the congressional expression.

I would hold that when these employees do not work on a holiday, they are to be paid the holiday gratuity; and that when they do work on a holiday, they are to be paid the day rate plus 50 percent. That is how I read the statutes.

It seems inequitable that an employee who does not work on a holiday should

618

receive a full day's pay, whereas an employee who is required to work shall be paid only time and a half, or 50 per cent more than is received by the one who does not work; but that is the way I read the statute. It would seem that the employee who is called back to work on a holiday should receive gratuity pay, plus regular pay, but the statute does not so read, and only Congress has the power to correct what does seem to be an inequity.

JONES, Chief Judge, concurs in the foregoing dissenting opinion.