Chalmers O. **DETLING** et al.

v.

The **UNITED STATES.**

Joseph **FRANCE** et al.

v.

The **UNITED STATES.**

Nos. 333-64, 353-66.

United States Court of Claims.

Oct. 16, 1970.

David Scribner, New York City, attorney of record, for plaintiffs; Joel C. Glanstein, New York City, of counsel.

Thomas W. Peterson, Washington, D. C., with whom was Asst. Atty. Gen. William D. Ruckelshaus, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

## OPINION

PER CURIAM:

These cases were referred to Trial Commissioner Lloyd Fletcher with directions to make findings of fact and recommendation for conclusions of law under the order of reference and Rule 134(h). The commissioner has done so in an opinion and report filed on April 28, 1970. On May 26, 1970, defendant filed a notice of intention to except to the commissioner's report. However, on July 28, 1970, defendant filed a motion to withdraw its notice of intention to except which was allowed on August 14, 1970. In its motion filed July 28, 1970, defendant requested that the court adopt the commissioner's opinion, findings of fact and conclusion of law. On August 6, 1970, plaintiffs filed a motion requesting that the court adopt the commissioner's opinion, findings and recommended conclusion of law. Since the court agrees with the commissioner's opinion, findings and recommended conclusion of law as hereinafter set forth, it hereby grants the motions of the parties and adopts the same as the basis for its judgment in these cases without oral argument. Therefore plaintiffs are entitled to recover and judgment is entered for plaintiffs in accordance with the opinion with the amounts of recovery to be determined in further proceedings pursuant to Rule 131(c),

OPINION OF COMMISSIONER

FLETCHER, Commissioner:

In these consolidated cases [1] the court is called upon to determine whether plaintiffs are entitled to overtime wages for certain periods of their port watches aboard defendant's vessels.[2] For the reasons stated below, it is my opinion that plaintiffs are entitled to recover although not to the full extent claimed by them.

The detailed facts are set forth in the findings below. In summary, they show that, during the periods involved, plaintiffs were so-called wage board employees of the Corps of Engineers. Each held a Merchant Marine engineer license issued by the United States Coast Guard. They were employed by the Corps to serve as engineer officers aboard the dredge *Essayons*,[3] the mission of which was the dredging of river and harbor channels in the North Atlantic Division of the Corps. The dredge was in operation at all times except when undergoing repairs and during two 48-hour periods over the Christmas and New Year's holidays. It is the latter periods which have given rise to the present dispute since, during those two 48-hour periods when the vessel is either tied to a dock or anchored in a harbor, the Corps requires that a so-called "port watch" be maintained. Typically, the port watch begins at 12 noon on the day before the holiday and ends at 12 noon of the day following the holiday.

During this 48-hour port watch period, the Corps required that a licensed marine engineer be aboard the vessel for the entire period.[4] The engineer designated for this duty was generally one who at the commencement of port watch had not yet completed his normal 10-day tour of duty so that the standard two days of port watch were usually part of his normal 10-day tour.[5] There was a difference, however, between the hours of watch on regular duty and those on port wach.

On a regular 10-day tour, an engineer worked, and was paid, for eight hours per day which watch was divided into two four-hour periods on duty, each being separated by an eight-hour off-duty period. At the end of each four-hour duty period, the engineer on duty was relieved by another licensed engineer.

By contrast, on port watch, the engineer worked, and was paid, for a duty period of eight consecutive hours per day. For the remaining 16 hours of the day he was considered by the Corps to be "off duty" and hence not entitled to any pay for those hours. The crucial fact, however, is that, unlike a regular watch period, at the conclusion of his eight-hour tour on port watch, he was not relieved by another licensed engineer, and he was required to remain aboard the vessel for the purpose of responding to any call for help from unlicensed engine room personnel[6] on duty in case of emergency.

1. By agreement of the parties, trial was held only with respect to the plaintiffs in Detling v. United States, No. 333–64, it being further agreed that resolution of the issues in the Detling case would resolve the issues in the companion case of France v. United States, No. 353–66.

2. The vessels involved are dredges operated by the Corps of Engineers. The plaintiffs in *Detling* all served aboard the dredge Essayons which has been selected as a typical Corps of Engineers dredge.

3. See footnote 2, *supra*.

4. The Corps also required the continual presence aboard of one other licensed man,

a deck officer. The Corps considers the engineer and deck officer to be in joint command of the vessel during port watch.

5. During regular operation of the dredge, engineers worked administrative workweeks "back to back," meaning they stood their assigned watches on 10 consecutive days and were off duty four days.

6. These unlicensed personnel, known as oilers and firemen, were on duty for eight-hours shifts in the engine compartments. At the conclusion of their eight-hour watch, and upon being relieved by other unlicensed personnel, they were free to leave the vessel until their next assigned watch.

The engineer plaintiffs contend that during this so-called "off duty" period of 16 hours, they are actually on a standby status for defendant's benefit and continue to bear the ultimate responsibility for the operation of the engine room equipment. Although the record does not indicate it has ever happened, plaintiffs further say that in the event of an equipment malfunction during this "off duty" period, the Coast Guard could, and probably would, move to suspend or revoke their engineer license if the malfunction were traceable to their negligence or incompetence.[7]

Accordingly, plaintiffs maintain that they are entitled to overtime pay for all (or, in the alternative, for a part) of these 16 hours of port watch when, even though admittedly not working, they were on standby status for their employer's benefit. Under the applicable statutes and court decisions, plaintiffs are clearly correct in their alternative argument, and it is difficult, indeed, to understand the defendant's contention to the contrary.

5 U.S.C. §§ 673c and 913 (1964 ed.) which were codified in 1966 as 5 U.S.C. 5544 and 6102 provide in pertinent part as follows:

§ *673c Restoration of wage rates; adjustment of weekly rates and hours of employees.*

The weekly compensation, minus any general percentage reduction which may be prescribed by Act of Congress, for the several trades and occupations, which is set by wage boards or other wage-fixing authorities, shall be re-established and maintained at rates not lower than necessary to restore the full weekly earnings of such employees in accordance with the full-time weekly earnings under the respective wage schedules in effect on June 1, 1932: *Provided,* That

the regular hours of labor are established at not more than eight per day or forty per week, but work in excess of such hours shall be permitted when administratively determined to be in the public interest: *Provided further,* That overtime work in excess of eight hours per day or in excess of forty hours per week shall be compensated for at not less than time and one-half the basic rate of compensation, except that employees subject to this section who are regularly required to remain at or within the confines of their post of duty in excess of eight hours per day in a standby or on-call status shall be paid overtime rates only for hours of duty, exclusive of eating and sleeping time, in excess of forty per week. * * *

\* \* \* \* \* \*

§ *913. Payment of overtime to wage-board employees; computation.*

Employees whose basic rate of compensation is fixed on an annual or monthly basis and adjusted from time to time in accordance with prevailing rates by wage boards or similar administrative authority serving the same purpose shall be entitled to overtime pay in accordance with the provisions of section 673c of this title. * * *

■ Section 673c clearly requires the payment of overtime wages to employees "required to remain at * * * their post of duty in excess of eight hours per day in a standby or on-call status * * * for hours of duty, exclusive of eating and sleeping time * * *." This statutory language fits plaintiffs' case "like a glove." Essentially, the defendant's only answer is that, during the 16 hours of port watch when he is not actually working, the licensed engineer is "off duty" because he is entitled to spend those hours entirely as he pleases provided,

---

7. The dredges operated by the Corps of Engineers are "public vessels" and, as such, are exempt from Coast Guard inspection and regulation by 46 U.S.C. § 362. However, at the Corps' election, these dredges are actually inspected and

certificated by the Coast Guard. Also, at the Corps' request, the Coast Guard has taken disciplinary action against the licenses of personnel serving aboard the vessels.

only, that he never leave the vessel. It is the proviso upon which one chokes in trying to understand the defendant's argument. If the requirement that the engineer remain aboard the vessel for those 16 hours of so-called "off duty" time is not "a standby or on-call status" within the meaning of section 673c, then words have lost all meaning. Defendant's contention that during those 16 hours, the licensed engineer is in an off-duty status is contradicted by the fact that he has not been relieved by another licensed engineer and that, unlike off-duty unlicensed engineroom personnel, he is not free to leave the dredge. The only reasonable conclusion is that the engineer occupies a standby status during those hours, and to the extent they exceed 40 hours per week, the statute requires that he be paid overtime excepting, however, his eating and sleeping times. The facts show that those times totaled about eight hours per day in the case of these plaintiffs while standing port watches, and under the statute those eight hours per day are not compensable. *See,* Rapp v. United States, 340 F.2d 635, 642, 167 Ct.Cl. 852, 866 (1964). But, the remaining eight hours of the 16 standby hours are compensable, and plaintiffs are entitled to recover overtime wages to that extent.

While the foregoing observations may well be considered as dispositive of these cases, mention should be made of several decisions which give further support to the conclusion that plaintiffs are entitled to recover. In the first place, it is clear that plaintiffs were required to remain aboard the *Essayons* at all times during port watch to the end that they would be immediately available in case of an emergency. Hence, their time aboard (except for sleeping and eating) was spent for the benefit of the defendant, and as the Supreme Court has stated in Armour & Co. v. Wantock, 323 U.S. 126, 133, 65 S.Ct. 165, 168, 89 L.Ed. 118 (1944):

> Of course an employer, if he chooses, may hire a man to do nothing, or to do nothing but wait for something to happen. Refraining from other activity often is a factor of instant readiness to serve, and idleness plays a part in all employments in a standby capacity. Readiness to serve may be hired, quite as much as service itself, and time spent lying in wait for threats for the safety of the employer's property may be treated by the parties as a benefit to the employer. Whether time is spent predominantly for the employer's benefit or for the employee's is a question dependent upon all the circumstances of the case.

Cases from this court which lend support to the conclusion arrived at in this opinion are Winsberg v. United States, 98 F.Supp. 345, 120 Ct.Cl. 511 (1951); Gaetke v. United States, 145 F.Supp. 913, 136 Ct.Cl. 756 (1956), and Rapp v. United States, *supra. Rapp,* in particular, stands for the proposition that employees who are required to remain overtime on their agency's premises in a standby status are entitled to compensation therefor even though they may not be called upon to perform any actual work during the standby period. That principle is clearly applicable in plaintiffs' favor here.

Finally, the defendant contends that plaintiffs' claims should be barred by laches. In a case such as this, however, where the defendant can show no prejudice inuring to it as a result of plaintiffs' failure to complain more promptly, the equitable doctrine of laches does not apply. Winsberg v. United States, *supra,* 95 F.Supp. 345, 346–347, at 120 Ct.Cl. 511, 517. See, also, Albright v. United States, 161 Ct.Cl. 356 (1963) where the court explained the doctrine at pp. 362–363:

> Laches has been raised as a defense to pay actions in this court on numerous occasions, primarily in the areas of wrongful separation, reduction in rank, and overtime pay. While we have, on occasion, allowed the defense in the case of wrongful discharges [citing cases], it has not been allowed in actions for overtime pay

[citing cases]. The reason for this is defendant may be prejudiced by the delay in one case, but not in the other. Where the defense has been allowed, the defendant has been injured because it has employed another to replace the discharged employee and, thus, has been required to pay two salaries for a period of time, which it would not have been required to pay had the plaintiffs filed their suits more promptly. *This factor is lacking in the cases involving overtime.* [Emphasis supplied.]

In summary, plaintiffs are entitled to recover eight hours per day overtime for all port watches to which they were assigned within six years preceding the dates of filing of their respective petitions. The exact amounts of recovery must be determined in further proceedings under Rule 131(c).