**Daniel W. McCONNELL, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 483–82C.**

United States Claims Court.

July 27, 1984.

Bernard J. Hasson, Jr., Arlington, Va., for plaintiff; Paul Flaherty, Arlington, Va., of counsel.

Joseph T. Casey, Jr., Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, Washington, D.C., for defendant; Karlissa Krombein, Washington, D.C., and Frank Parsons, U.S. Army Corps of Engineers, Arlington, Va., of counsel.

## OPINION

NETTESHEIM, Judge.

This civilian pay case is before the court after oral argument on plaintiff's motion for summary judgment and defendant's cross-motion for partial summary judgment.*

## FACTS

Plaintiff Daniel W. McConnell ("plaintiff") held the position of Dam Repairer, WB–5318–10 at Mt. Morris Dam, New York, and claims entitlement to overtime compensation from July 14, 1968, until February 4, 1981, when he alleges that required overtime was discontinued because he was no longer required to occupy government-owned housing at the dam site.

Plaintiff worked a 40-hour standard workweek. The dispute concerns plaintiff's work status during the hours outside his normal hours of employment. Plaintiff alleges that he was required to be available to respond to all emergencies and to perform other services and thus is entitled to overtime compensation for standby duty. Plaintiff also claims overtime pay for services he regularly performed during the 45 minutes immediately prior to the start of each workday between July 14, 1968, and August 1977, and defendant does not contest this claim for the period September 24, 1976, through July 26, 1977. The balance,

---

* This opinion was issued on July 20, 1984, as an unpublished opinion.

according to defendant, is barred by the statute of limitations.

The parties' submissions reveal that over the years during which plaintiff was the incumbent dam repairer the Corps of Engineers (the "Corps") changed its requirements for remaining at the dam site. Prior to being hired, plaintiff was informed in a letter dated June 4, 1968, that "[i]t is required that either the foreman or the incumbent of this position be present at the dam site, on call in case of emergency, at all times. This is in addition to the regular tour of duty of 8 hours per day, 5 days [per] week." A memorandum dated December 22, 1970, from V.H. Hourigan, Chief, Construction-Operations Division to plaintiff and Paul Ressler, the incumbent of the foreman position, stated that as of January 10, 1971, the requirement that the employees be present at the dam site after regular work hours was deleted:

> [I]t will no longer be a requirement that either of the two employees involved be present on the reservation beyond the normal work day. It will be expected, however, that an employee present on the reservation after his normal tour of duty, respond to any of the alarm systems and take whatever action that is necessary. Any work performed after the normal tour of duty will be paid at overtime rates.

A Disposition Form dated January 28, 1971, clarifying procedures for the new work schedule, stated in pertinent part: "In no instance is the dam to be left unattended for more than 16 hours, unless permission is received from the District Office." Hourigan explained in a memorandum of January 28, 1971, that a supervisor or maintenance personnel could be called on to substitute during weekends.

By letter, not in the record, apparently dated August 15, 1975, plaintiff requested clarification of his duty status after the normal work day. The Corps' response, in a letter from Col. Bernard C. Hughes, dated September 4, 1975, stated: "Under normal circumstances, both, you and Mr. Ressler, may leave the installation after your regular duty hours." Plaintiff received a memorandum dated June 7, 1978, from Lt. Col. Thomas R. Braun, Acting District Engineer of the Corps. This memorandum reiterated "[p]revious policy on the same subject [which] was established in the attached correspondence [not in the record]. *Standby Duty*—Under normal circumstances, Dam personnel which reside in Government housing at Mt. Morris Dam, may leave the installation after regular duty hours." Nothing in the record contradicts that this policy was implemented. Moreover, plaintiff has never submitted a statement or affidavit—in this court, before the General Accounting Office, or to the Corps—that he was ever given instructions at variance from the 1975 and 1978 correspondence from the Corps.

The June 7, 1978 memorandum came after plaintiff was notified by memorandum dated October 18, 1976, of a Comptroller General decision of possible application to plaintiff—*Ralph E. Conway*, Unpub.Comp. Gen. B–176924 (Sept. 20, 1976). As described in the memorandum, *Conway* held that lock and dam employees residing in government housing at the dam site were entitled to overtime compensation for "those periods of time they are *required* to remain on the installation to respond to calls after regular duty hours." (Emphasis in original.) The October 18, 1976 memorandum instructed plaintiff that "[y]our claim should be sent to the U.S. Army Engineer District Buffalo, ... ATTN: Comptroller ...." Plaintiff made a claim by letter dated October 21, 1976, for the years 1968 to 1975. Plaintiff asserted that he was entitled to standby duty overtime compensation under the Federal Employees Pay Act of 1945, 5 U.S.C. § 5544(a) (1976), due to restrictions on his activities and movements and the requirement that he remain on ready alert. Plaintiff stated that he was called out to work an average of 253 times a year. The claim was received by the Corps and then was forwarded to the General Accounting Office (the "GAO") and received on October 29, 1976.

The GAO referred the claim back to the Corps for investigation. In a memorandum dated April 20, 1977, the Corps by Donald M. Liddell, Chief, Engineering Division, advised that the six-year statute of limitations precluded plaintiff's claim to the period after October 21 [sic], 1970. On the basis of the December 22, 1970 memorandum, Liddell concluded that there was no requirement for attendance at the dam site after January 10, 1971. Corps Comptroller Howard V. Brown recommended in an undated memo titled "Administrative Report" that because plaintiff had not provided supporting documentation regarding his actual performance of standby duty during the period prior to January 10, 1971, the claim should be denied. An overlap was noted between the dates claimed by Mr. McConnell for standby overtime and by Mr. Ressler, the dam foreman. On February 20, 1979, the Corps forwarded plaintiff's claim to GAO with the recommendation that it be denied. The plaintiff was advised and furnished with this correspondence by memorandum dated July 10, 1979.

The Comptroller General in *Daniel W. McConnell*, Unpub.Comp.Gen. B–203650 (Mar. 22, 1982), denied plaintiff's claim. "[N]one of the documentation submitted in this case indicates that Mr. McConnell was restricted to the vicinity of his residence after January 10, 1971 ...." *Daniel W. McConnell*, at 4. "Although he was still required to reside in housing on the Government reservation, he was free to leave the site anytime he wished." *Id.* at 3–4. The GAO referred to a denial of

plaintiff's claim by the GAO Claims Division on October 29, 1976, which is not a part of the record, but which apparently relied upon 31 U.S.C. § 71a (1976) (current version at 31 U.S.C. § 3702 (1982)). On the basis of the six-year limitations period of section 71a, plaintiff's claims prior to October 29, 1970, were barred.[1] The GAO did not pass on plaintiff's claim regarding early reporting.

Plaintiff then filed his action in the United States Court of Claims on September 24, 1982.

## DISCUSSION

Plaintiff claims compensation for overtime for standby duty pursuant to 5 U.S.C. § 5544(a) from July 14, 1968, to February 4, 1981. His first amended complaint additionally claims overtime standby wages for the period after October 1, 1982, because plaintiff allegedly was coerced into signing a lease of the government-owned quarters on the dam property in contravention of 5 U.S.C. § 5911(e) (1982).

*Claim for Overtime Standby Duty*

This claim resolves itself into two separate disputes. The first concerns the application of the statute of limitations to plaintiff's claims. The second concerns the merits of plaintiff's claim for compensation for periods outside the normal workday and workweek.

1. *The Statute of Limitations*

Defendant interposes the six-year statute of limitations, 28 U.S.C. § 2501 (1982), to

---

1. Because of its decision regarding the application of the statute of limitations, the court need not comment further. The GAO's analysis of plaintiff's pre-October 29, 1976 claims included a period during which plaintiff was required to remain at the dam site. Regarding the period from October 27, 1970, to January 9, 1971, the GAO noted that either plaintiff or the dam foreman was required to remain at the site after normal duty hours to respond in the case of emergencies. The GAO ruled:

> There is nothing in the record before us which indicates that his [plaintiff's] activities were often interrupted, as in the *Hyde* [*Hyde v. United States*, 209 Ct.Cl. 746 (1976)] and *Conway* cases, by an emergency or other work situation requiring prompt attention.

> We are unable to conclude that Mr. McConnell was in a state of 'ready alert' while restricted to the site after his regular duty hours. Thus, the claim for overtime compensation under 5 U.S.C. § 5544(a) may not be allowed for the time period prior to January 10, 1971.

Plaintiff had presented his claim to the Comptroller General under the Fair Labor Standards Act, 29 U.S.C. §§ 201–219 (1976), as well as the Federal Employees Pay Act of 1945. The GAO ruled that the Fair Labor Standards Act was not applicable because "[a]s a prevailing rate employee Mr. McConnell's entitlement to overtime compensation under title 5, United States Code, is governed by subsection 5544(a)." *Daniel W. McConnell*, at 3.

eliminate plaintiff's claims predating September 24, 1976, six years before he filed in the Court of Claims. Plaintiff seeks to avoid the impact of the statute of limitations by arguing that a new cause of action accrued to plaintiff when he filed his original claim in the GAO on October 29, 1976, which would allow consideration of his claim at least from October 29, 1970. Alternatively, plaintiff contends that the statute was tolled because the Corps failed to fulfill its duty to inform plaintiff of his rights regarding his claim and because the Corps misled him into believing that it had the sole power to pass on his claim.

28 U.S.C. § 2501 provides in relevant part: "Every claim of which the United States Claims Court has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." In pay cases the cause of action first accrues when the pay should have been paid to the employee. *Bebee v. United States*, 226 Ct.Cl. 308, 324, 640 F.2d 1283, 1293 (1981); *Flack G. Milner*, 29 Comp.Gen. 517 (1950) (for § 71a). Under this initial reading of the statute, plaintiff's recovery is limited to the period from September 24, 1976, to February 4, 1981, when he concedes the job at Mt. Morris Dam no longer had an overtime standby duty requirement.

■ Plaintiff's argument that his claim actually arose upon his filing with the GAO is at odds with the rule in this court that the exhaustion of permissive administrative remedies does not toll or lengthen the limitations period.[2] *Sohm v. United States*, 3 Cl.Ct. 74, 76 n. 1 (1983); *see Soriano v. United States*, 352 U.S. 270, 275, 77 S.Ct. 269, 273, 1 L.Ed.2d 306 (1957). This principle applies to claims brought before the GAO. *McQuown v. United States*, 199 Ct.Cl. 858, 873–74 (1972); *Withers v. United States*, 69 Ct.Cl. 584, 587 (1930).

■ The cases relied upon by plaintiff do not change this result. In *Marr v. United States*, 123 Ct.Cl. 474, 106 F.Supp. 204 (1952), an overtime civilian pay case, the court clearly stated that permitting recovery for periods prior to six years before bringing suit was based upon "an accord which merged out of the claim upon which it was based, regardless of its merits, and created a new promise to pay based upon the accord." 123 Ct.Cl. at 479, 106 F.Supp. at 207. Because defendant has never agreed to pay plaintiff for his alleged overtime, there is no accord or similar independent agreement to pay.

Plaintiff correctly cites to the holding in *Friedman v. United States*, 159 Ct.Cl. 1, 310 F.2d 381 (1962), *cert. denied*, 373 U.S. 932, 83 S.Ct. 1540, 10 L.Ed.2d 691 (1963), that for disability retirement pay cases the cause of action arises not upon retirement itself, but upon the action of the military boards entrusted with the task of determining whether a serviceman should be retired for disability. In such cases "where an

**2.** Plaintiff's motion for summary judgment and memorandum in support thereof and plaintiff's reply to defendant's response and cross-motion for [partial] summary judgment both include motions to strike certain of defendant's arguments and documentary evidence.

Plaintiff moved to strike the GAO's *McConnell* decision from the record on the basis that it was *ex parte*, without a hearing. This decision, however, is not on review; rather, the court is reviewing the Corps' decision not to pay plaintiff's claim for overtime. The decisions of the Comptroller General are not binding in this court, although they provide a body of opinion which this court is free to consult. *Essex Electro Engineers, Inc. v. United States*, 3 Cl.Ct. 277, 282 (1983). In this case the court concludes that the GAO decision represented a thorough factual and correct legal analysis on the only

question before this court, *i.e.*, whether from September 24, 1976, to February 4, 1981, plaintiff was required to remain at the dam site beyond the normal workday. Plaintiff's motion to strike part of the Code of Federal Regulations has been denied.

Plaintiff also asked the court strike a Corps memorandum dated November 16, 1978, because it reflects an offer to compromise and is thus objectionable under Fed.R.Evid. 408. The court did not rely on the memorandum in reaching its decision. Plaintiff's motion to strike time and pay records as premature has been denied. Defendant submitted them for the permissible purpose of showing that non-standby overtime had been paid to plaintiff. Finally, the Howard Brown Administrative Report was not objectionable because it reflects Corps Comptroller Brown's opinion.

administrative decision is mandatory the claim is not ready for suit until such a decision is had or is excused." 159 Ct.Cl. at 14, 310 F.2d at 390. Plaintiff's case is not a disability retirement claim. *Friedman* itself recognized that the GAO is a permissive, not mandatory, remedy and therefore not a necessary prerequisite for filing a cause of action which would toll the statute of limitations. 159 Ct.Cl. at 8, 310 F.2d at 386.

Plaintiff also attempts to make an argument on the basis of 31 U.S.C. § 71a. He states that section 71a, the GAO's six-year statute of limitations is retrospective, whereas 28 U.S.C. § 2501 is prospective in its operation. This statement is simply nonsensical. This court's actions are governed by section 2501, the proceeding before the GAO was permissive, and section 71a is inapplicable in this action.

■ Plaintiff alleges that the Corps misled him into the belief that the Corps had the final authority to settle his claim. Plaintiff cites *Marr v. United States*, 123 Ct.Cl. 474, 106 F.Supp. 204, and *Helene Curtis Industries, Inc. v. United States*, 160 Ct.Cl. 437, 312 F.2d 774 (1963), for the proposition that the Corps violated its duty of informing plaintiff of his rights to overtime pay. Neither of these cases stands for the proposition that the Corps had the duty to do anything more than it did, which was to inform plaintiff of the *Conway* Comptroller General decision promptly after it was rendered. While *Marr* has some attractive dictum that "[i]t should not be necessary for a manual worker for the government to have a lawyer at his elbow on pay day," 123 Ct.Cl. at 478, 106 F.Supp. at 206, this statement was made in reference to the Government's contention of *Marr's* dilatoriness, not delay caused by government deception. Furthermore, *Marr* was not decided on the basis of tolling, but upon, as discussed, a new independent promise to pay an account stated. *Helene Curtis* involved the Government's duty to inform bidders on government contracts of information they could not otherwise obtain. That decision did not arise in

the civilian pay context and would not, in any event, call for more than that which the Corps did, which was to inform plaintiff of the *Conway* decision. Nor can it fairly be said that by telling plaintiff that he "should" file his claim administratively, the Corps gave an affirmative and mandatory direction, thereby misleading plaintiff as to his judicial remedy. The record reveals no basis to conclude that the Corps concealed information that would toll the statute. *See Willcox v. United States*, 3 Cl.Ct. 83, 85 (1983), *appeal docketed*, No. 83–1382 (Fed.Cir. Sept. 15, 1983).

As a result, the cognizable claim period for standby pay is September 24, 1976, through February 4, 1981. 28 U.S.C. § 2501 also mandates that plaintiff's claim based on early reporting can only be considered from September 24, 1976.

2. *Status of Duty Outside Normal Workday*

■ Plaintiff bases his claim for overtime pay on 5 U.S.C. § 5544(a), which provides:

An employee whose pay is fixed and adjusted from time to time in accordance with prevailing rates under section 5343 or 5349 of this title, or by a wage board or similar administrative authority serving the same purpose, is entitled to overtime pay for overtime work in excess of 8 hours a day or 40 hours a week. However, an employee subject to this subsection who is regularly required to remain at or within the confines of his post of duty in excess of 8 hours a day in a standby or on-call status is entitled to overtime pay only for hours of duty, exclusive of eating and sleeping time, in excess of 40 a week.

Plaintiff claims entitlement under this section as interpreted by the GAO in *Hyde v. United States*, 209 Ct.Cl. 746 (1976); *Detling v. United States*, 193 Ct.Cl. 125, 432 F.2d 462 (1970); and *Ralph E. Conway*, Unpub.Comp.Gen. B–176924 (Sept. 20, 1976). These cases are completely distinguishable and do not support plaintiff's alleged entitlement to overtime compensa-

tion. The court in *Detling* held that the plaintiff was entitled to overtime standby pay under a particular state of facts. Detling and his co-plaintiffs were wageboard employees of the Corps holding merchant marine Engineer licenses. They served aboard a dredge that was in operation 24 hours per day, except for two 48 port-watch hour periods over Christmas and New Year's holidays. During these port-watch periods, the Corps required an engineer to be on board the entire time, who was only paid for eight hours. The court stated that "he [the engineer] was not relieved by another licensed engineer, and he was required to remain aboard the vessel for the purpose of responding to any call for help from unlicensed engine room personnel on duty in case of emergency." 193 Ct.Cl. at 128, 432 F.2d at 463 (footnote omitted). Whereas Detling was "not free to leave the dredge," plaintiff after January 10, 1971, was free to leave the job site.

This case was followed by the *Hyde* decision. *Hyde* involved whether a security officer at a Naval Research station must be compensated if he was restricted within the confines of his post of duty. The Court of Claims permitted recovery because at trial it was "established that while performing DSO [Duty Station Officer] duty plaintiff's whereabouts were narrowly limited and his activities substantially restricted." 209 Ct.Cl. at 747. Plaintiff in the case at bar was not restricted in his whereabouts, but was free to leave the dam site if he wished. The fact that Mt. Morris Dam is in a rural, isolated location does not mean that plaintiff was required to remain there during off-duty hours, a requirement necessary for compensation. *See Sheets v. United States*, 2 Cl.Ct. 101, 103 (1983).

The GAO was waiting upon the decision in *Hyde* to consider whether—if that decision was favorable to the security officer— it would reconsider its decision denying overtime compensation to claimant in *Ralph E. Conway*, Unpub.Comp.Gen. B–176924 (Sept. 20, 1976). Conway was a wage board employee serving as a lock master on the Kentucky River System. The locks on the system were operative 24 hours per day; therefore, one man of the two stationed had to be available for operating the locks beyond the regular eight-hour day. One was required to be on the reservation at all times. In a prior decision distinguishing this case from *Detling*, the Comptroller General had ruled that "in *Detling* the petitioner was confined to a dredge on which he had a room which was not his usual residence, whereas Mr. Conway spent his standby time with his family at his residence on the lock reservation." *Ralph E. Conway*, Unpub.Comp.Gen. B–176924 (Oct. 17, 1974). The GAO interpreted *Hyde* as ruling that the fact that an employee has his residence within the confines of his post of duty at which he performs standby duty does not preclude payment of overtime pay under section 5544(a). However, the GAO further found as a matter of fact that "while Mr. Conway was on standby duty, he could not leave the confines of the lock reservation ...."

The standard articulated in *Detling* and followed in *Hyde* recognizes that "readiness to serve may be hired, quite as much as service itself ....", but that the question is whether such time was spent for the primary benefit of the employer United States. *Detling*, 193 Ct.Cl. at 131, 432 F.2d at 465 (quoting *Armour & Co. v. Wantock*, 323 U.S. 126, 133, 65 S.Ct. 165, 168, 89 L.Ed. 118 (1944)). Under this standard plaintiff cannot recover. Plaintiff's presence on the job site due to the location of his residence, as he asserts, did serve to discourage vandalism and to make him more readily available for call-back duty. The only evidence of record (the December 12, 1970 policy change and the 1975 and 1978 documents advising plaintiff that he could leave the installation after regular work hours) establishes, however, that plaintiff was not required to be at the job site outside his normal tour of duty. A requirement to live in government housing is not, without more, sufficient to entitle an employee to overtime compensation.

### 3. Government-owned Housing

In support of plaintiff's contention that he was restricted to the dam site after normal work hours, he charges that defendant violated 5 U.S.C. § 5911(e) by requiring him to rent government-owned quarters at the dam. Plaintiff also claims that he was coerced into signing a lease for his residence after October 1, 1982, in contravention of section 5911(e). This statute provides:

> The head of an agency may not require an employee or member of a uniformed service to occupy quarters on a rental basis, unless the agency head determines that necessary service cannot be rendered, or that property of the Government cannot adequately be protected, otherwise.

Section 5911(e), which sets forth the circumstances in which the Government can require a federal employee to live in government housing, does not equate the requirement of living in government-owned housing with standby status entitling a federal employee to overtime pay. Defendant admits, and the record reveals, that one purpose of the requirement was to discourage vandalism, which is a stated circumstance under the statute. Plaintiff does not allege that the housing requirement was not properly authorized.[3]

### CONCLUSION

Based on the foregoing, plaintiff's motion for summary judgment is granted with respect to his second cause of action from September 24, 1976, and July 26, 1977, and is otherwise denied, and defendant's motion for partial summary judgment is granted. The parties have filed a stipulation for entry of judgment in the amount of $733.97.

IT IS SO ORDERED.

No costs.

---

**3.** Plaintiff's other arguments have been considered carefully and rejected. One of his contentions is that defendant opposes recovery under section 5544(a) on the basis of 5 U.S.C. § 5542(b), which, according to plaintiff, is irreconcilable with section 5544(a). One case cited by defendant, *Rapp v. United States*, 167 Ct.Cl. 852, 340 F.2d 635 (1964), does refer to section 5542(b), but *Rapp* is not essential to defendant's case.