**Robert PRESSER, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 428–87C.**

United States Claims Court.

Oct. 20, 1988.

Erik Rocksund, Columbia Falls, Mont., for plaintiff.

Stuart James, Washington, D.C., with whom was Asst. Atty. Gen. John R. Bolton, for defendant.

## OPINION

NETTESHEIM, Judge.

After transfer from the United States District Court for the District of Montana, this case is before the court on cross-motions for summary judgment after argument. Post-argument briefing has been received. The issue is whether the Government is required to compensate a federal employee assigned as a relief operator at an overtime rate when the employee's regular working hours were rescheduled, as needed, requiring him to be available to work other shifts in lieu of his basic workweek.

## FACTS

Robert Presser ("plaintiff") sues for overtime compensation pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 207(a)(1), 216(b) (1982) (the "FLSA"), and liquidated damages, 29 U.S.C. § 216(b). The following facts are undisputed unless otherwise noted. Plaintiff served as a Relief Control Room Operator by the Department of the Interior, Bureau of Reclamation (the "BOR"), Hungry Horse Project Office, Hungry Horse, Montana. Plaintiff was employed in this position from June 19, 1978, until May 24, 1987.

During the period 1978 through 1981, plaintiff's wages were established by a negotiated wage schedule between the Government and the International Brotherhood of Electrical Workers ("IBEW"). Following the decertification of the IBEW on June 24, 1981, plaintiff's salary was established by regional wage surveys conducted by the BOR.

Plaintiff initiated two grievances by letters of July 2, 1981, and September 24, 1981, concerning the scheduling of his hours of work. The earlier grievance charged that his work schedule was changed without proper notice and that he was required to work more than one shift within a 24-hour period. Plaintiff complained in the September 1981 grievance that he was required to work 10 consecutive 8-hour day shifts without 2 days off. The September 1981 grievance was considered formally and encompassed the substance of the July 1981 grievance, as well. Plaintiff's grievance was deemed without merit on appeal to the Department of the Interior's Office of Hearings and Appeals. The June 12, 1982 decision letter addressed both grievances, as follows:

In a letter to the appeals examiner dated January 27, 1982, the acting regional director explained the nature of grievant's work situation:

The powerplant control room is manned on a 3 shift, 24-hour-a-day, 7-day-a-week basis. This is accomplished with a staff of 5 journeymen powerplant operators, including Mr. Presser. Four of these powerplant operators work on a regularly scheduled rotating basis so that during the year each one will have worked about an equal number of day, swing and graveyard shifts. The fifth powerplant op-

erator (Mr. Presser), works a scheduled relief shift based on the administrative workweek of Sunday through Saturday and a normal basic workweek schedule of Monday through Friday. However, it is the nature of the relief position that variations can be scheduled in advance to provide for leave periods and other absences by Hungry Horse's regular operators. Hungry Horse's work scheduling policy provides that the relief operator's schedule for each biweekly period must be posted a[t] least 4 days in advance and that a minimum of 8 hours advance notice of any change of scheduled tour of duty should be given. In laying out the biweekly schedule, if the relief operator is not needed to replace one of the other operators, he is scheduled as a second operator on the day shift.... [Ellipses in original.]

Prior to 1978, the relief operator worked what is referred to as a "back-to-back" week, which required 10 consecutive days work with 4 consecutive days off. In May of 1978, the operators requested that this be changed to the current five-day work, two-day off schedule to which management agreed. This provides more flexibility for operators to schedule annual leave and also makes the relief position more attractive as it includes the greatest number of Saturdays and Sundays off. For many years it was the Project practice that the operator with the least seniority on the project filled the relief position and Mr. Presser, as junior operator, worked this relief schedule from June 22, 1978 to September 8, 1978, when another operator was hired. Mr. Presser then filled one of the four rotating operator positions until April 11, 1980, when he requested that he again be assigned to the relief position. This was agreeable to the operator with the least seniority who would normally fill this position and Mr. Presser has worked on the relief schedule since that time.

The acting regional director states further that for the pay period in question, the hours of work during each workweek were performed within a period of 5 consecutive workdays, that grievant was not in pay status in excess of 40 hours in each administrative workweek, worked only the 8 a.m. to 4 p.m. shift, and worked only one shift during each 24-hour period.

With respect to work scheduling, the acting regional director stated as follows in a letter dated March 12, 1982, to the appeals examiner:

The General Rule for establishing work schedules (Chapter 61, Title 5 US Code and FPM 610–1–4) states that an employee should be assigned a tour of duty at least a week in advance. Agencies may depart from this General Rule if it would seriously handicap the organization in carrying out its functions or would substantially increase costs. The work-scheduling policy for the relief operator is a departure from the general rule in that the relief operator's schedule for each biweekly period must be posted at least 4 days in advance and a minimum of 8 hours advance notice of any change of scheduled tour of duty should be given. Without this latitude in scheduling, costs would be increased and the function would be handicapped. The departure from the General Rule is discretionary with the agency and not in violation of rules and regulations.

An administrative workweek consists of 7 consecutive calendar days. 5 CFR 610.102(a). Under 5 U.S.C. § 5542 (1976), overtime work means each hour of work in excess of 8 hours in a day or in excess of 40 hours in an administrative workweek. 5 CFR 550.111(a). Under the Fair Labor Standards Act, entitlement to overtime compensation is based on the number of hours an employee works in a workweek. The fact that an employee may be required to work more than 5 consecutive 8–hour days does not give rise to an entitlement to overtime compensation unless more than 5 such days are worked in the same workweek.

Moreover, it is possible for an employee to work 10 consecutive 8–hour days—5 in each of two administrative workweeks—and not be entitled to overtime compensation. Dec.Comp.Gen. G–193384/B–193544/B–194035 (June 18, 1979).

Grievant has provided no specific information to support his allegation that he worked more than one shift in a 24–hour period or that he is being subjected to arbitrary schedule changes. Since grievant has made no significant challenge to the facts as stated in the letters of the acting regional director, I accept the facts as stated therein. Under the authorities discussed above, these facts compel the conclusion that the grievance is without merit, since grievant has established no entitlement to overtime compensation because he has not shown that he has worked in excess of 40 hours in either workweek of the pay period in question.

Although plaintiff's formal grievance was not successful, the BOR on August 14, 1987, responded to plaintiff's July 27, 1981 grievance by notifying plaintiff that back-to-back short changes (swing shift [4 p.m. to 12 midnight] to graveyard shift [midnight to 8 a.m.]) would be limited to 2 per week and that regularly scheduled employees would be required to give at least 8 hours' notice before plaintiff was scheduled to relieve them. In addition, by notice dated August 18, 1981, plaintiff's schedule as Relief Operator was changed, as follows:

1. The bi-weekly tour of duty scheduled for the relief operator should be posted at least 4 days in advance.

2. The relief operator should be given a minimum 8 hours advance notice of any change in the scheduled tour of duty. With 8 hours advance notice to the relief operator changes may be made either (1) in the daily clock hours in a posted schedule or (2) in days scheduled to be worked, except that:

   A. A break of more than one hour should not be scheduled, and

   B. Employee's two days off are to be consecutive.

Thereafter, on November 15, 1981, the BOR issued Project Letter No. O & M 16, captioned "Working Hours," that set a "normal" tour of duty for all project employees except powerplant operating personnel of 8 a.m. to 4:30 p.m. Monday through Friday with a lunch of one-half hour from 12 noon to 12:30 p.m. Project Letter No. O & M 16 provided that the Hungry Horse Powerplant Control Room be manned by 3 shifts, for 8 hours each, over 24 hours, 7 days a week. "Tours of Duty" for powerplant operating personnel were set, as follows: 1) For the powerplant Control Room Operator: 8:00 a.m. to 4:00 p.m. day shift; 4 p.m. to 12 midnight swing shift; midnight to 8 a.m. graveyard shift. 2) For the Relief Operator: 8 a.m. to 4:30 p.m., Monday through Friday, with one-half hour, noon to 12:30 p.m., each day for lunch. "When relieving a Control Room Operator, the Relief Operator will then follow the schedule of the person being relieved as posted."

Project Letter No. O & M 16 further stated:

The following provisions will apply to the Relief Operator:

1. The bi-weekly tour of duty scheduled for the Relief Operator should be posted at least 4 days in advance.

2. The Relief Operator will be given a minimum of 8 hours advance notice of any change in the scheduled tour of duty. With 8 hours advance notice to the Relief Operator changes may be made either; (1) in the daily clock hours in a posted schedule or (2) in days scheduled to be worked, except that:

   A. A break of more than one hour should not be scheduled, and

   B. Employees' two days off are to be consecutive

   C. Back to back short changes will not be made e.g., swing to days to graveyard

   D. Short changes will be limited to two per week

The parties do not dispute that the June 12, 1982 decision letter correctly states that the BOR's administrative workweek was Sunday through Saturday and that plain-

tiff's basic workweek was Monday through Friday.

There were no changes in plaintiff's regular, recurring workday hours and basic workweek subsequent or prior to November 15, 1981. No written agreements altering plaintiff's regular, recurring workday hours and basic workweek were ever entered into between plaintiff and the BOR. Plaintiff worked all shifts required by the BOR. Plaintiff's tour of duty was changed from time to time with 8 hours' notice. This is consistent with Supplement to Federal Personnel Manual, ch. 610, subch. 1 (cited as FPM R1–610.1.1 (Aug. 14, 1978)), which sets out the guidelines with respect to "Weekly and Daily Scheduling of Work."

Plaintiff alleges that he was required to work in excess of 40 hours per week without overtime compensation. This claim is based on plaintiff's belief that he was entitled to overtime compensation if he was required to work a shift outside the established hours of 8:00 a.m. through 4:30 p.m. Monday through Friday, with a one-half hour lunch break. Plaintiff's complaint details his work schedule dating back to June 1978 and charges that the FLSA violations began two weeks into his job. The parties contest whether plaintiff has been paid for the hours that he has worked in excess of the workweek established by the BOR by Project Letter No. O & M 16, but the dispute devolves to whether the BOR is obligated to pay plaintiff for all hours worked in excess of his 40–hour "basic workweek" to the extent that he did not work those hours and was rescheduled to work on other shifts.

By his cross-motion for summary judgment, plaintiff seeks compensation for unpaid overtime in the amount of $16,584.00 for willful violation of the FLSA, 29 U.S.C. § 255(a), dating from 3 years before he filed suit in federal district court, *Presser v. Hodel,* No. CV–86–110–M–CCL (D.Mont., filed May 22, 1986), and liquidated damages in the same amount. Defendant would limit any recovery to 2 years, contending that if violation occurred, it was not willful.

## DISCUSSION

Plaintiff instituted suit under the FLSA, 29 U.S.C. § 207(a)(1), and the Federal Employees Pay Act of 1945, 5 U.S.C. § 5542(a) (1982), which provide that an employee is to be paid overtime for all hours worked in excess of 40 hours in an administrative workweek at the rate of one and one-half times his regular hourly rate. 5 C.F.R. § 532.503(a)(1) (1987), stipulates that employees shall be paid overtime pay under the Federal Employees Pay Act or the FLSA—"whichever provides the greater overtime benefit." Plaintiff seeks compensation for overtime under the FLSA.

Congress authorized the establishment of a "[b]asic 40–hour workweek" and the regulations to implement the concept in 5 U.S.C. § 6101(a)(2) (1982). The head of each Executive agency was authorized to

(A) establish a basic administrative workweek of 40 hours for each full-time employee in his organization; and

(B) require that the hours of work within that workweek be performed within a period of not more than 6 of any 7 consecutive days.

Section 6101(a) further provides:

(3) Except when the head of an Executive agency, ... determines that his organization would be seriously handicapped in carrying out its functions or that costs would be substantially increased, he shall provide, with respect to each employee in his organization, that

(A) assignments to tours of duty are scheduled in advance over periods of not less than 1 week

(B) the basic 40–hour workweek is scheduled on 5 days, Monday through Friday when possible, and the 2 days outside the basic workweek are consecutive;

(C) the working hours in each day in the basic workweek are the same;

(D) the basic nonovertime workday may not exceed 8 hours;

The quoted statutory language is carried forward almost verbatim in 5 C.F.R. § 610.111(a) and § 610.121(a). 5 C.F.R. § 532.501 defines an administrative work-

week as "a period of seven consecutive calendar days," and the term "basic workweek" is equated to the days and hours within an administrative workweek which make up a full-time employee's regularly scheduled 40–hour workweek. Section 532.501 also defines "Overtime work" as

authorized and approved hours of work performed by an employee in excess of eight hours in a day or in excess of 40 hours in an administrative workweek, and includes irregular or occasional overtime work and regular overtime work.

Defendant takes the position that plaintiff has been paid all the overtime that he is due under the FLSA because he has been compensated for all hours actually worked in excess of 40 hours in any administrative workweek, although these hours may not have coincided with the basic workweek for the Relief Operator as set forth in Project · Letter No. O & M 16. According to defendant, because plaintiff was the Relief Operator, his normal schedule was 8:00 a.m. to 4:30 p.m. Monday through Friday, when he was not otherwise scheduled to perform his job, *i.e.*, to relieve other Powerplant Control Room Operators. Defendant points to the language of the Project Letter itself: "When relieving a Control Room Operator, the Relief Operator will then follow the schedule of the person being relieved as posted." From plaintiff's perspective, Project Letter No. O & M 16 established plaintiff's basic workweek and any shift to which he was assigned as Relief Operator that did not fall within his basic workweek entitled him to overtime compensation pursuant to the FLSA.[1]

5 C.F.R. § 610.111(a) provides, in pertinent part:

(a) The head of each agency, with respect to each full-time employee to whom this subpart applies, shall establish by regulation:

(1) A basic workweek of 40 hours which does not extend over more than 6 of any 7 consecutive days. Except as provided in paragraphs (b), (c), and (d) of this section, the regulation shall specify the days and hours within the administrative workweek that constitute the basic workweek.

(2) A regularly scheduled administrative workweek that consists of the 40–hour basic workweek established in accordance with paragraph (a)(1) of this section, plus the period of regular overtime work, if any, required of each employee....

5 C.F.R. § 610.111(b) provides:

When it is impracticable to prescribe a regular schedule of definite hours of duty for each workday of a regularly scheduled administrative workweek, the head of an agency may establish the first 40 hours of duty performed within a period of not more than 6 days of the administrative workweek as the basic workweek. A first 40 hour tour of duty is the basic workweek without the requirement for specific days and hours within the administrative workweek. All · work performed by an employee within the first 40 hours is considered regularly scheduled work for premium pay and hours of duty purposes. Any additional hours of officially ordered or approved

---

**1.** At argument plaintiff represented that he did not seek overtime pay on the basis of being required to work more than 40 hours in 5 consecutive days spanning 2 administrative workweeks. *Sanford v. Weinberger,* 752 F.2d 636, 640 (Fed.Cir.1985), disposes of any such claim to overtime pay. Appellees in *Sanford* had been awarded overtime pursuant to the FLSA on the basis of working a daily shift of 8 hours for 7 consecutive days scheduled so that the employees worked 5 days in 3 of every 4 administrative workweeks. Reversing the district court's holding that the employees were entitled to overtime because their consecutive tours of duty constituted 56 hours of work, the Federal Circuit ruled:

Neither ... [the Federal Employees Pay Act] nor the regulations promulgated thereunder prescribes any penalty for failure by the Government to comply with the scheduling requirements governing the number of consecutive days worked. Moreover, the FLSA, which does have a penalty provision, does not proscribe the scheduling of any number of consecutive workdays. Thus, even if the district court was correct in holding that defendant's schedule violated the scheduling regulations, it erred in assessing overtime pay as the penalty for such violations.

752 F.2d at 640.

work within the administrative workweek are overtime work.

5 C.F.R. § 610.121(a)(1) provides, in pertinent part:

Except when the head of an agency determines that the agency would be seriously handicapped in carrying out its functions or that costs would be substantially increased, he or she shall provide that—

Assignments to tours of duty are scheduled in advance of the administrative workweek over periods of not less than 1 week;

Plaintiff does not dispute that section 610.111(b) authorized the BOR to set the first 40 hours that he worked as plaintiff's basic workweek if the BOR found that it was "impracticable to prescribe a regular schedule of definite hours of duty for each workday of a regularly scheduled administrative workweek." *See* Plf's Br. filed May 25, 1988, at 5. However, plaintiff argues that because Project Letter No. O & M 16 established for the Relief Control Operator a regular workweek 8:00 a.m. to 4:30 p.m. Monday through Friday and also required him to work the schedule of any Powerplant Control Room Operator that he was designated to relieve, the BOR decided, instead, that it was practicable to establish a 40-hour workweek, plus a period of regular overtime work.

Plaintiff begins with a false premise. He assumes that he is entitled to compensation for his regularly scheduled workweek, even if he is not required to work any of those hours. Any hours worked outside of his scheduled week, plaintiff claims, therefore would entitle him to overtime. However, it is the nature of plaintiff's position that requires him to fill in when needed. The establishment of plaintiff's "regular working hours" is merely a device to ensure that he would have a full workweek.

Plaintiff points to the following definitions of irregular and regular overtime in 5 C.F.R. § 532.501:

"Irregular or occasional overtime work" means overtime work which is not

part of the regularly scheduled administrative workweek.

. . . .

"Regular overtime work" means overtime work which is a part of the regularly scheduled administrative workweek.

"Regularly scheduled administrative workweek" means

(1) For full-time employees, the period within an administrative workweek within which employees are scheduled to be on duty regularly.

Plaintiff also relies on 29 C.F.R. § 778.105 (1987), which provides in full:

An employee's workweek is a fixed and regularly recurring period of 168 hours—seven consecutive 24–hour periods. It need not coincide with the calendar week but may begin on any day and at any hour of the day. For purposes of computing pay due under the Fair Labor Standards Act, a single workweek may be established for a plant or other establishment as a whole or different workweeks may be established for different employees or groups of employees. *Once the beginning time of an employee's workweek is established, it remains fixed regardless of the schedule of hours worked by him. The beginning of the workweek may be changed if the change is intended to be permanent and is not designed to evade the overtime requirements of the Act.* The proper method of computing overtime pay in a period in which a change in the time of commencement of the workweek is made, is discussed in §§ 778.301 and 778.302.

(Emphasis added.)

29 C.F.R. § 778.105 was promulgated by the Department of Labor and does not address the situation in which a federal employee's workweek cannot be changed on a permanent basis. 5 C.F.R. § 610.111(b) was promulgated by the Office of Personnel Management, the cognizant authority to promulgate regulations administering the FLSA for federal employees. *Zumerling v. Devine*, 769 F.2d 745, 749 (Fed.Cir. 1985). Section 610.111(b) allows flexibility in assignment and is the regulation that must control in respect of plaintiff as a

federal employee. FPM R1–610.1.1 (Aug. 14, 1978), is the express statement of agency policy contemplated by 5 C.F.R. § 610.111(b):

### .1 Establishment of Work Weeks

Heads of Operating Offices May approve: (1) Variations in tours of duty other than Monday through Friday in order to stagger the force for performance of necessary Saturday and Sunday work to obtain 7 days per week coverage and, (2) daily tours of duty for shift coverage purposes where the daily shifts are the same clock hours on each day's tour.

Care should be exercised in establishing daily work hours in order that employees' private lives be respected and they receive adequate rest and sleep periods. (A) A break of more than one hour should not be scheduled in an employee's working hours in any work day. (B) Assignment to tours of duty should be made in advance over periods of not less than one week. (C) Employees' two days off are to be consecutive, and (D) Daily clock hours should be the same each day. Exceptions to (A), (B), (C), and (D) above require prior clearance of the Regional Director. The above criteria applies [sic] to all employees except where specific provisions have been negotiated under employee-management agreements.

Forty-hour basic duty tours extended over either a six-day period or for less than five days also require approval of the Regional Director.

The reference in FPM Par. 610.S1.–4a to "schedule tours of duty at least one week in advance" and that in S1–4b(a) of Supplement 990–2 are interpreted as being consistent with each other in that the former deals with advance scheduling of tours and the latter deals with scheduling tours for a minimum of one week.

Requests for variations in work schedules for educational purposes should be forwarded to the Regional Office for approval, due to variables which affect entitlement to pay.

Plaintiff's reading of the law would not allow the BOR to schedule plaintiff to a regular shift when he was not assigned to relieve other shifts. Project Letter No. O & M 16 announces both the regular shifts for Powerplant Control Room Operators and also the schedule for the employee who is to relieve them. By definition the relief schedule cannot be predicted, but the hours of duty when there was no need for a Relief Operator can. Plaintiff was afforded predictability, not a right to sue for overtime for hours that he was not required to work. The definitions of irregular and regular overtime do not apply when the nature of the work performed is to work outside a regularly scheduled 40-hour workweek. To argue that the BOR did not make the determination contemplated by 5 C.F.R. §§ 610.111(b), 610.-121(a)(1) is insubstantial given the administrative decision quoted previously in this opinion telling plaintiff—for the second time and quoting the Acting Regional Director as making a statement of agency policy—why his schedule could not be limited to his basic workweek:

[I]t is the nature of the relief position that variations can be scheduled in advance to provide for leave periods and other absences by Hungry Horse's regular operators. Hungry Horse's work scheduling policy provides that the relief operator's schedule for each biweekly period must be posted a[t] least 4 days in advance and that a minimum of 8 hours advance notice of any change of scheduled tour of duty should be given. In laying out the biweekly schedule, if the relief operator is not needed to replace one of the other operators, he is scheduled as a second operator on the day shift. A copy of Hungry Horse's work scheduling policy is enclosed, along with a copy of FPM R1–610.1.1 and Regional Director, L.W. Lloyd's August 13, 1981 letter to Hungry Horse Project.

The BOR was not required to say more to avail itself of 5 C.F.R. §§ 610.111(b), 610.-121(a)(1); see 5 U.S.C. § 6101(a)(3) preamble.

To support his argument that the BOR failed to schedule plaintiff's workweek to correspond with his work requirements,

plaintiff also relies on 5 C.F.R. § 610.121(b):

(1) The head of an agency shall schedule the work of his or her employees to accomplish the mission of the agency. The head of an agency shall schedule an employee's regularly scheduled administrative workweek so that it corresponds with the employee's actual work requirements.

(2) When the head of an agency knows in advance of an administrative workweek that the specific days and/or hours of a day actually required of an employee in that administrative workweek will differ from those required in the current administrative workweek, he or she shall reschedule the employee's regularly scheduled administrative workweek to correspond with those specific days and hours. The head of the agency shall inform the employee of the change, and he or she shall record the change on the employee's time card or other agency document for recording work.

(3) If it is determined that the head of an agency should have scheduled a period of work as part of the employee's regularly scheduled administrative workweek and failed to do so in accordance with paragraphs (b)(1) and (2) of this section, the employee shall be entitled to the payment of premium pay for that period of work as regularly scheduled work under Subpart A of Part 550 of this chapter. In this regard, it must be determined that the head of the agency: (i) Had knowledge of the specific days and hours of the work requirement in advance of the administrative workweek, and (ii) had the opportunity to determine which employee had to be scheduled, or rescheduled, to meet the specific days and hours of that work requirement.

Section 610.121(b)(1)–(3) set forth scheduling requirements from one administrative workweek to the next. The BOR in Project Letter No. O & M 16 established that the Relief Operator was to receive a minimum of 8 hours' notice of a change from his "normal" to relief shift. This procedure is consistent with section 610.121(b)(1), which recognizes that work shall be scheduled to accomplish the mission of the agency. It is obvious that not all relief work could be scheduled in advance of an administrative workweek. Nor does plaintiff cite an instance wherein the BOR could have scheduled relief work a week in advance and failed to do so.

An examination of plaintiff's pay records from 1983 forward [2] that were submitted with plaintiff's cross-motion for summary judgment reveals that he did work on a regular basis during the administrative workweek and that when he worked hours in addition to his basic workweek (normal shift) within the administrative workweek, he was paid overtime, and that he was paid overtime when he was given fewer than 8 hours' notice that he would be required to work another shift. However, when plaintiff was assigned to work other shifts, in lieu of his normal shift, he was not compensated for the regularly scheduled shift that he was not required to work, unless the relief work exceeded 40 hours in any one administrative workweek. This was proper.[3]

In plaintiff's brief filed on October 14, 1988, he argues that other federal agencies

**2.** Plaintiff agrees that the maximum recovery period would be 3 years from the date on which he filed his complaint in federal district court, *i.e.*, May 20 or 22, 1983, to the present. As a result of this presumed cut-off date, plaintiff's claim based, *inter alia*, on the BOR's changing his basic workweek during pay period 21 in 1981 cannot be considered. *See* Plf's Br. filed July 19, 1988, at 2. However, the court has reviewed all of plaintiff's claims and does not find that the record supports an inference that the BOR engaged in a pattern or practice of violation in the past that could imply a continued pattern or practice during the years that can be considered. For example, the BOR admitted that it would change plaintiff's hours for proper

scheduling purposes, which would include accompanying payment of premium pay. Defendant's Answers to Request for Admissions, Nov. 13, 1986, no. 26. This practice does not run afoul of the Federal Employees Pay Act or the FLSA. *See Sanford v. Weinberger,* 752 F.2d at 640.

**3.** Plaintiff avers that documents are missing from his personnel file that he reviewed on January 30, 1987. Affidavit of Robert C. Presser, July 18, 1988, ¶¶ 2, 3. He says that these documents show that he neither consented to being paid less than the FLSA requires nor that he ever wanted the relief position on a full-time basis. *Id.* ¶ 3. Plaintiff offers no excuse why he

pay premium pay for "relief work" in order to comply with the FLSA. Plaintiff's conclusion makes a logical jump that does not necessarily follow. The collective bargaining agreement may have greater coverage than the FLSA.[4]

Plaintiff is correct in his assertion that the FLSA makes no distinction between collective bargaining employees and prevailing rate employees. 29 U.S.C. §§ 207(f), (g). However, plaintiff confuses the right of a federal agency to establish an employee's scheduling based upon its demands and the method of compensation once entitlement is established. There is no question that plaintiff would be entitled to compensation at the rates established by the FLSA if it were first established that he had an entitlement. The method of computing plaintiff's overtime was accomplished by determining the number of hours he worked in excess of 40 hours and utilizing the administrative workweek as the measuring period. This was in accordance with 5 C.F.R. § 610.111(b) and does not violate 5 U.S.C. § 5542(a).

## CONCLUSION

Based on the foregoing, defendant's motion for summary judgment is granted and

plaintiff's cross-motion for summary judgment is denied. The Clerk of the Court shall dismiss the complaint.

waited until his final brief to make a showing by affidavit, as required by RUSCC 56(g), *see Sweats Fashions, Inc. v. Pannill Knitting Co.,* 833 F.2d 1560, 1566–67 (Fed.Cir.1987); *see also Dunkin' Donuts of America, Inc. v. Metallurgical Exoproducts Corp.,* 840 F.2d 917, 919 (Fed.Cir. 1988), that he required additional time or the aid of the court in obtaining evidence that could defeat defendant's motion for summary judgment. Plaintiff already had filed one brief on May 25, 1988, making the same point (without affidavit) about missing records. However, even if plaintiff's affidavit showing were considered to be timely, the documents allegedly missing do not bear on an issue of material fact. It is immaterial that plaintiff did not consent to receiving less than his due under the FLSA. Indeed, the record establishes that he has claimed overtime and premium pay since shortly after he began employment as a Relief Operator. Moreover, it is immaterial that plaintiff never wanted to work as a full-time Relief Operator, since the record establishes that since 1981 "Relief Operator" was the title of the position that he held and that among the Relief Operator's duties was relieving other operators on an as-needed basis. Plaintiff offers no job description or other evidence or averment to conflict

with Project Letter No. O & M 16 (Nov. 15, 1981).

4. Plaintiff testified during argument on July 29, 1988, that other federal agencies paid relief operators premium pay for relief work. This testimony, received pursuant to RUSCC 43(c), bore on how the FLSA should be interpreted in light of how other federal agencies interpreted its requirements. Thereafter, plaintiff submitted affidavits to support his assertion and defendant rebutted with counter-affidavits. No genuine issue of material fact has been presented because plaintiff's affidavits discussed pay of other Control Room Operators covered by collective bargaining agreements. The fact that a collective bargaining unit could obtain a benefit for its members who are required to engage in relief duties does not mandate this benefit for all federal employees.

Plaintiff has adduced no evidence that would defeat defendant's motion for summary judgment complete on plaintiff's claim to premium pay on the basis of being required to remain on standby. *See McConnell v. United States,* 5 Cl.Ct. 785 (1984), *aff'd mem.,* 770 F.2d 176 (Fed. Cir.1985).